## CLARIDGE APARTMENTS CO. v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. CLARIDGE APARTMENTS CO.

Nos. 8296, 8297.

Circuit Court of Appeals, Seventh Circuit.

Dec. 1, 1943.

Rehearing Denied Dec. 22, 1943.

Walter Hamilton, of Chicago, Ill., for petitioner.

J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, John W. Smith, Sp. Atty., Bureau of Internal Revenue, Samuel O. Clark, Jr., Sewall Key, and Gerald Wallace, all of Washington, D. C., and Samuel H. Levy and Muriel S. Paul, Sp. Assts. to Atty. Gen., for respondent.

John E. Hughes, of Chicago, Ill., amicus curiae.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This is a Federal income tax case wherein the chief issue arises out of the disputed basis for the depreciation of a large apartment building, acquired by taxpayer in 1935 in a Sec. 77B bankruptcy reorganization proceeding. 11 U.S.C.A. § 207. Corollary issues are:

(1) The applicability of Sec. 270 of the Chandler amendment to the Bankruptcy Act, 11 U.S.C.A. § 670, providing for a decrease of the predecessor's depreciation basis proportionate to a cancellation or reduction of indebtedness through a 77B reorganization. In other words, and to be more specific, taxpayer challenges the soundness of the Commissioner's holding that an exchange of stock for bonds constitutes a "cancellation or reduction" of the debt within Section 270.

(2) The possible retroactive effect of Sec. 270 to prior tax years in which years the tax has already been paid.

(3) The decrease of the depreciation base by the amount of interest liability allegedly forgiven in the reorganization.

(4) The propriety of the Tax Court's exclusion, from the base, of a substantial sum claimed to have been paid as commission to the entrepreneur of the property.

(5) The refusal of the Tax Court to permit deduction of certain expenses of upkeep of the property.

(6) A separate and distinct issue, arising out of taxpayer's challenge of evidentiary support of the Tax Court's finding as to the value of the property in 1924, is also conditionally present.

The aforestated legal questions arise out of a rather simple fact statement, with factual dispute well nigh nil.

The property involved is a 106 apartment building in Chicago, which was erected upon a vacant lot owned by Charles F. Henry, a contractor and builder. In 1924, Henry erected this building at an alleged cost of $385,326.37. He conveyed the land to taxpayer's predecessor, taking in payment therefor, all of its $100,000 of par value stock. He asserted that he earned and took a commission of ten per cent of the building cost, i. e., $38,532.64, for services in supervising the construction of the building. This item was excluded by the United States Tax Court in its determination of the cost of the building.

The taxpayer's predecessor fixed its basis for depreciation by adding three items: first, the $385,326.37 cost of the building; second, $38,532.64, for contractor's services in supervising construction; and third, a miscellaneous item of $750.18. On this basis, taxpayer's predecessor each year, in its income tax return, made its depreciation deduction. Up to August 1, 1935, when the taxpayer acquired the property upon the completion of the reorganization proceedings, a total depreciation of $139,253.71 had been charged. This left (with minor other adjustments not here important) an adjusted depreciation basis of $239,377.33. Taxpayer asserts this should be accepted as the depreciation basis for the years in dispute (1935-1938).

The Commissioner makes different computations and reaches a different conclusion. Factually, he challenged only the $38,532.64 item in the taxpayer's base, which item the U. S. Tax Court disallowed.[1]

Commissioner's position is more nearly one of confession and avoidance. He asserts that the proper basis for depreciation was not $239,371.33, but rather a sum which was also the market value of the building on August 1, 1935, when the taxpayer acquired the property. The fair value was $164,450.

Commissioner reached his conclusion in this way: In March, 1924, taxpayer's predecessor floated a $340,000, 6½% bond issue which was defaulted in October, 1931, at which time $277,000 of bonds were still outstanding. In February, 1932, there was a foreclosure decree, and in June, 1934, bankruptcy proceedings were instituted under Sec. 77B. A plan of reorganization

---

[1] This disallowance was wrongful, so taxpayer here contends, and he asks this court to correct it.

was approved in May, 1935, and the final decree entered, March 1, 1937. The execution of that plan necessitated the exchange of ninety per cent of taxpayer's no par stock for the $277,000 of bonds—one share for each one hundred dollars face value of bonds—and the remaining ten per cent of stock going to predecessor's stockholders. The Court found the fair market value of this stock never exceeded $45 per share.

The Tax Court found that the fair market value of the building at the time of the confirmation of the plan was not in excess of $141,000 and the fair market value of the land was $16,000.[2]

Whether we should accept taxpayer's base of $239,377.33 or the Commissioner's here-asserted base of $141,000 turns not so much upon the ascertainment of the facts (concerning which there is dispute as to one item only) as it does on the Commissioner's legal contention that in determining the basis of depreciation he was required to reduce the original basis by the amount of indebtedness of the predecessor which was cancelled or reduced in said bankruptcy proceeding, not however below the fair market value of the property.

In other words, we are confronted preliminarily by two questions.

First, by accepting stock in taxpayer company and surrendering the bonds of taxpayer's predecessor, was there a *"cancellation or reduction"* of the amount of the original indebtedness of taxpayer's predecessor? If this question be answered in the affirmative, then certain other issues become unimportant because of the United States Tax Court's finding that the value of the building in 1935 was $141,000.

The second question is the applicability of Sec. 270 to the determination of a depreciation base made prior to its enactment. In other words, is Sec. 270 retroactive so as to affect the tax base for depreciation for tax years prior to its enactment.

The decision of the Tax Court satisfied neither party. Both sides appealed (and one brief amicus curiae has been filed). Their appeals have been consolidated in this court.

The Tax Court held: (1) Section 270 was applicable to the tax year 1938. (2) Section 270 was not applicable to the prior tax years. (3) There was no "cancellation or reduction" of the indebtedness within the meaning of this statute when the bonds were exchanged for stock of equal book value, so as to require diminution of the depreciation base. (4) The interest item which was wiped out in the reorganization was deductible, under Sec. 270, from the 1938 depreciation base. (5) The 10% commission was improperly included in the original cost, and therefore in the depreciation base. (6) Certain items of taxpayer's alleged expense were, by it, improperly deducted.

The Commissioner appeals from rulings (2) and (3). The taxpayer appeals from the holding of the court in (1), (4), (5), and (6).

Several of the above-stated issues will become moot if the Government's first contention, namely, that Sec. 270 controls, is upheld. We therefore turn first to a consideration of this section, which is quoted below.[3] Also quoted is Sec. 268,[4] 11 U.S. C.A. § 668.

---

[2] Although especially irrelevant to the issue, it appears that in July 1940, after the completion of the Sec. 77B reorganization the building and lot were sold for the sum of $126,000 and the assumption of $20,000 liabilities.

[3] "Sec. 270 [as further amended by the Act of July 1, 1940, c. 500, 54 Stat. 709]. In determining the basis of property for any purposes of any law of the United States or of a State imposing a tax upon income, the basis of the debtor's property (other than money) or of such property (other than money) as is transferred to any person required to use the debtor's basis in whole or in part shall be decreased by an amount equal to the amount by which the indebtedness of the debtor, not including accrued interest unpaid and not resulting in a tax benefit on any income tax return, *has been canceled or reduced in a proceeding under this chapter,* but the basis of any particular property shall not be decreased to an amount less than the fair market value of such property as of the date of entry of the order confirming the plan. Any determination of value in a proceeding under this chapter shall not be deemed a determination of fair market value for the purposes of this section. The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe such regulations as he may deem necessary in order to reflect such decrease in basis for Federal income-tax purposes and otherwise carry into effect the purposes of this section." (Italics ours.)

Rejecting the Government's urge that this section applied, the Tax Court said:

"The substitution of common stock for bonds is not a cancellation or reduction of the liability represented by the bonds, no matter how much less the stock may be worth, since 'the assets are not thereby freed from obligation. * * * While the bond loan has been terminated, the amount borrowed is now committed to capital stock liability instead of to the liability of a fixed indebtedness.' "

We are unable to accept this view of the statute. The acceptance of the stock for the bonds wiped out a direct debt liability, enforceable by legal action. The debt carried an interest obligation and priority of rights. The stock carried no right to interest and not even to dividends, unless surplus existed, and a declaration of distribution had been made. It carried no right to collect the sum represented by the investment therein. At best it is a right only to a proportionate distribution of the assets over and above all debts of the corporation, in case of liquidation.

■ As the Court said in Eyster v. Centennial Board of Finance, 94 U.S. 500, 502, 24 L.Ed. 188:

"The liability of a corporation to its stockholders on account of their stock is not a debt. The shares of a stockholder represent his proportion of the property of a corporation; and, upon the winding up of its affairs, the assets remaining after all liabilities are discharged are for division among the stockholders, according to their respective interests. The payment to stockholders upon such a division is for a dividend of the property divided, not for a debt owing by the corporation."

The words "canceled or reduced," as used in this statute, are comprehensive. Given their ordinary or literal meaning, they cover a case such as is here presented. Here there was an elimination of the bonded indebtedness. Assume that the former bondholders, in accepting the stock in the new company, received all of the assets of the old company (they received only 90%) and the new company had the same assets as the old company, they still gave up their status as creditors with the correlative right to interest, to sue to collect a debt if default occurred, to priority against lesser and subsequent creditors. They also gave up the interest which they forgave.

If we search for the intent of Congress as affecting the construction of these words, the taxpayer is in no better position.

The financial crash of '29 caused values of real estate and buildings thereon to tumble. The Chandler Act dealt with the reorganization of companies which held such properties. It dealt with debtors that had outstanding mortgages and other indebtednesses in excess of the value of their real properties. When the reorganization of these debtors was completed, in many instances the indebtednesses were greatly reduced or cancelled. In the instant case the debt was entirely eliminated. In place thereof, stock of much less market value than the face value of the debt, was issued.

It would be both illogical and unfair to retain a fictitious depreciation basis for tax purposes when the actual valuation in the reorganization of the debtor was much less. Congress was dealing with realities. It sought not only to avoid injustice to the Government, but also prevented injustice being done to the taxpayer. It should be noted that Section 270 contained a provision which prevented the depreciation basis going below the fair value of the building.

If taxpayer's construction of this section be adopted, then a reorganized debtor could claim a depreciation based upon a value twice or three times as much as the real value of the building.

■ Our conclusion is that Sec. 270 applies to a case where there has been a reorganization and the existing debt either cancelled or diminished and also to cases where stock in the new debtor is issued in place of such indebtedness. And this is so

4 "Sec. 268. Except as provided in section 270 of this Act, no income or profit, taxable under any law of the United States or of any State now in force or which may hereafter be enacted, shall, in respect to the adjustment of the indebtedness of a debtor in a proceeding under this chapter, be deemed to have accrued to or to have been realized by a debtor, by a trustee provided for in a plan under this chapter, or by a corporation organized or made use of for effectuating a plan under this chapter by reason of a modification in or cancelation in whole or in part of any of the indebtedness of the debtor in a proceeding under this chapter."

even though the par value (not the market value) of the stock was the same as the face value of the mortgage indebtedness.

This brings us to the consideration of the date of the application of Section 270 of the Bankruptcy Act, as amended by the Chandler Amendment. In other words, we meet directly, the query, Did Section 270 apply to years prior to the date of its enactment, that is, prior to the tax year of 1938?

It must readily be conceded that retroactive effect to legislation will never be given unless such purpose is expressly stated, or is to be inferred by clear intent, or by the necessary and unavoidable implications of the legislation. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L. Ed. 858; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L. Ed. 893; Mertens, Law of Fed.Income Taxation, Sec. 3.33; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457.

On this theory, the Board of Tax Appeals held in Commodore v. Commissioner, 46 B.T.A. 718, that Sec. 270 did not apply to years prior to 1938. Its decision was affirmed by the Circuit Court of Appeals of the Sixth Circuit in 135 F.2d 89.

We think the legislative intent here is not left in doubt, for Congress in Sec. 276, sub. c(3), 11 U.S.C.A. § 676, sub. c(3), expressly provided:

"Sections 268 and 270 of this Act shall apply to any plan confirmed under section 77B *before the effective date of this amendatory Act* and to any plan which may be confirmed under section 77B on and after such effective date, * * *."

In the face of this express statute, judicial search for Congressional intent becomes a somewhat idle, or futile task. Our inquiry, if limited at all, is restricted to the meaning of the words which Congress used, when in Sec. 276, sub. c(3) it made specific provision for the effective date of the application of said section 270, that is when it expressly provided that Sec. 270 was retroactive in its application.

Assuming doubt and uncertainty in the words of said Section 276, sub. c(3) for the moment, it is interesting to note that Congress here dealt with both Section 270 and Section 268. The three sections, 268, 270, and 276, therefore, should be read together. Sections 268 and 270 are complementary. Section 268 relieves the debtor or corporation of a tax on any of its income represented by the cancellation of an indebtedness in a reorganization proceeding under Chap. X. We must read Section 270 in the light of this Sec. 268 tax exemption.

Debtor reorganization under the Bankruptcy Laws nearly always results in a reduction of the outstanding indebtedness. In fact, reorganizations are for the avowed purpose of avoiding the evil effects of over-indebtedness. This is accomplished, when the reorganizations are in good faith, by reduction or the elimination of all or a part of the debt burden.

Such a reduction of the debt of the reorganized debtor, however, might result in a so-called profit to the corporation. This occurs by reason of the lessening, or extinction, of its debt. By Section 268, Congress provided for this contingency and relieved the debtor from an income tax on such a possible charge of profit. On the other hand, were it not for Section 270, the debtor would profit unfairly. It would continue a depreciation base for tax purposes that is out of line with its actual value. It would be getting a benefit, which it should receive, under Section 268, but at the same time it would evade its taxes in so far as they reflected a false and exaggerated depreciation base.

Notwithstanding the logic which inhers in the relation of Sec. 268 and Sec. 270, and the reference to both of them in Sec. 276, sub. c(3), we would not be inclined to go behind the date of the passage of the Act, unless the language of said Sec. 276 leads clearly and irresistibly to such a construction.

And so we come to the words of the statute, to-wit:

"Sections 268 and 270 of this Act shall apply to any plan confirmed under section 77B *before the effective date of this amendatory Act* and to any plan which may be confirmed under section 77B on and after such effective date, * * *."

Given their ordinary meaning, the words "before the effective date of this amendatory Act" mean that it, the Act, applies to reorganizations which were confirmed before June 22, 1938, the date of the passage of Secs. 268, 270, and 276, sub. c(3).

We are not, therefore, giving effect to any doubtful or veiled or unexpressed intention of Congress. We are giving effect to the words Congress used when it made

Sections 268 and 270 retroactive in their application.

█ Should we limit the date in any manner? In the present case we are not required to go beyond bankruptcy reorganization tax cases which had not been closed and barred by the statute of limitations when the June, 1938 amendment became effective. The years to which the Commissioner attempted to apply Section 270 may well be called *open tax years*. As to such years both parties may obtain an adjustment. The taxpayer may get an adjustment under Sec. 268. The Commissioner may adjust the taxpayer's tax under Sec. 270. We hold that Sec. 276, sub. c (3), makes Sec. 270 applicable to taxpayer's tax for all the years in controversy, 1935, 1936, 1937 and 1938.

Aside from the express language of the statute, it seems clear that the same application should be given to Sec. 270 as to Sec. 268.

Finally, if we give the same effective date of application to both Sections 268 and 270, we are dealing with realities, with facts as they are. We are relieving an involved debtor from an income tax on a profit which it did not make when its debts were reduced; and we are asking it to figure its depreciation on a basis which accords with the facts, not with figures that are fictional and have no connection with values of today. Why should we attribute to words of a statute a meaning which would continue the make-believe, water values that were wrung out of them in the reorganization proceedings.

That such a construction would violate no provision of our Constitution, we are satisfied. Stockdale v. Ins. Co's, 20 Wall. 323, 87 U.S. 323, 22 L.Ed. 348; Brushaber v. Union R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713; Consolidated Utilities Co. v. Commissioner, 5 Cir., 84 F.2d 548; Jackson v. Price, 2 Cir., 74 F.2d 707; Wilgard Co. v. Commissioner, 2 Cir., 127 F.2d 514.

Taxpayer challenged the disallowance of two small items, to-wit, $1291.44 and $389.-60, for decoration and repairs in the year 1937. The disallowances were made because the same sums for the same purposes had been claimed in taxpayer's 1936 tax return. The Tax Court held,

"Since we are satisfied from the evidence that petitioner is seeking for 1937 a deduction already taken and allowed for the prior year, respondent's disallowance is approved."

█ Our conclusion on this issue is that the evidence is conflicting, and we can not disturb a finding which has evidence to support it.

Our conclusion that Sec. 270 governs makes it unnecessary for us to consider the fact issue raised by the taxpayer for a charge made by the contractor, Henry, of ten per cent, or $38,532.64, which he added to the building cost as a profit which he charged himself for erecting the building. The full reduction in the depreciation has not been made because Section 270 forbids the adjustment going lower than the fair market value. This being so, this item has no bearing in the outcome if said Section 270 applies.

In the appeal of the Commissioner, No. 8297, the order of the Tax Court is reversed with directions to enter an order in accord with the views here expressed. In the appeal of Claridge Apartments Company, No. 8296, those portions of the order from which this appeal is taken, are

Affirmed.