## CLARIDGE APARTMENTS CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

Nos. 28 and 29. Argued October 19, 20, 1944.—Decided December 4, 1944.

*Mr. John E. Hughes* for petitioner.

*Mr. Chester T. Lane,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key, J. Louis Monarch,* and *Mrs. Muriel S. Paul* were on the brief, for respondent.

*Mr. H. Brian Holland,* as *amicus curiae,* filed a brief urging reversal.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

The issues arise out of deficiency assessments made in respect to petitioner's federal income and excess profits taxes for the years 1935 to 1938 inclusive. They involve the applicability of § 270 of the Bankruptcy Act, as amended,[1] so as to require reduction of depreciation allowances claimed.

---

[1] Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544, as amended by the Act of June 22, 1938, c. 575, 52 Stat. 904, and the Act of July 1, 1940, c. 500, 54 Stat. 709, 11 U. S. C. §§ 668, 670. Section 270 is complementary to § 268, with which originally it was enacted as part of Chapter X of the Chandler Act. The two sections are as follows, the italicized portion of 270 constituting the whole of the amendment made in 1940.

"Sec. 268. Except as provided in section 270 of this Act, no income or profit, taxable under any law of the United States or of any State now in force or which may hereafter be enacted, shall, in respect to the adjustment of the indebtedness of a debtor in a proceeding under this chapter, be deemed to have accrued to or to have been realized by a debtor, by a trustee provided for in a plan under this chapter, or by a corporation organized or made use of for effectuating a plan under this chapter by reason of a modification in or cancelation in whole or in part of any of the indebtedness of the debtor in a proceeding under this chapter."

"Sec. 270. In determining the basis of property for any purposes of any law of the United States or of a State imposing a tax upon income, the basis of the debtor's property (other than money) or of such property (other than money) as is transferred to any person required to use the debtor's basis in whole or in part shall be decreased by an amount equal to the amount by which the indebtedness of the debtor, not including accrued interest unpaid and not resulting in a tax benefit on any income tax return, has been canceled or reduced in a proceeding under this chapter, *but the basis of any particular property shall not be decreased to an amount less than the fair market value of such property as of the date of entry of the order confirming the plan. Any determination of value in a proceeding under this chapter shall not be deemed a determination of fair market value for the purposes of this section.* The Commissioner of Internal Revenue, with

The transactions arose in connection with a reorganization proceeding under § 77B, 48 Stat. 912. They consisted essentially of petitioner's acquisition of all the assets of the insolvent debtor corporation, by an exchange of its capital stock without par value for the latter's bonds then outstanding. The Commissioner contends that the exchange resulted in a cancellation or reduction of indebtedness within the meaning of § 270, so as to require a corresponding reduction in the basis of the property transferred. Accordingly he now urges that the assessment should be made, as the section requires, upon the basis of the fair market value of the property.[2] The taxpayer's claim is made on the higher basis of the debtor corporation, in the view that § 270 is not applicable to such a transaction.

This difference has been the basic one between the parties in proceedings before the Tax Court,[3] the Circuit Court of Appeals and here. Others include a similar question with respect to the extinction of the debtor's liability for the accrued unpaid interest on the bonds and whether § 270 is made applicable retroactively to the years prior to 1938, by virtue of the provisions of § 276c (3) of the Chandler Act.[4]

the approval of the Secretary of the Treasury, shall prescribe such regulations as he may deem necessary in order to reflect such decrease in basis for Federal income-tax purposes and otherwise carry into effect the purposes of this section." (Emphasis added.)

[2] Cf. note 1 *supra*. Originally the Commissioner contended that the taxpayer's basis for depreciation was the market value of the property on acquisition in 1935 and this was a major issue before the Tax Court, cf. 1 T. C. 163. But the Tax Court held petitioner had acquired the assets in connection with a reorganization as comprehended by § 112 (g) of the Revenue Act of 1934, and that therefore its basis was the adjusted basis in the hands of the debtor corporation. This ruling was not contested on appeal and is not in question here.

[3] Cf. note 2 *supra*.

[4] The section is set forth in Part III of the opinion.

The Tax Court decided the principal issue on the merits in favor of the taxpayer, except with respect to the accrued interest. Cf. also *Capento Securities Corp.* v. *Commissioner,* 47 B. T. A. 691, affirmed, 140 F. 2d 382. It likewise limited the application of § 270 to the year 1938 and succeeding years. 1 T. C. 163. The Court of Appeals reversed the Tax Court's decision in both respects, holding there was a cancellation of indebtedness with respect to the unpaid principal [5] and that § 270 was applicable retroactively to require the prescribed reduction in basis for each of the tax years in question. 138 F. 2d 962. Certiorari was granted, 321 U. S. 759, because of the importance of the questions presented and a conflict on the question of retroactivity.[6] The facts are stated shortly in the margin, to give concrete perspective.[7]

---

[5] Consequently it made no ruling with reference to the accrued interest, since the amount of the principal held to have been "cancelled" was more than sufficient to bring the basis down to the fair market value in 1935.

[6] Cf. *Commissioner* v. *Commodore,* 135 F. 2d 89 (C. C. A. 6th), holding that § 276c (3) does not make §§ 268 and 270 retroactively applicable to tax years prior to 1938. The importance of the questions for the future has been minimized by repeal of § 270 by § 121 of the Revenue Act of 1943, c. 63, 58 Stat. 21, 41.

[7] The property consists of an apartment building, with furnishings, in Chicago. It was constructed in 1924 by the Claridge Building Corporation at a cost in excess of $385,000. The corporation at that time issued its 6½ per cent first mortgage bonds for $340,000. By October 1, 1931, the bonds outstanding amounted to $277,000. In consequence of defaults, on that date the trustee filed his bill of foreclosure, took possession of the property, and thereafter collected the rents. A decree for foreclosure was entered the following February, but there was no sale and the foreclosure proceeding was never consummated.

On June 16, 1934, the Building Corporation filed its voluntary petition under § 77B. In November of that year a plan of reorganization was agreed upon, which was confirmed and approved May 14, 1935. Pursuant to this the taxpayer corporation was organized and the property was transferred to it. Ninety per cent of its shares were

## I.

Petitioner earnestly argues that the Tax Court's decision, so far as this was in its favor, should be affirmed on the authority of *Dobson* v. *Commissioner,* 320 U. S. 489, though in other respects it seeks a reversal of that court's judgment.[8] For reasons presently to be stated, we think the case must be disposed of in its entirety by the application of § 276c (3), which determines the extent to which §§ 268 and 270 are applicable in point of time. Accordingly, we are not required to pass upon the merits of the other interesting issues or whether they fall within the *Dobson* admonition. On the other hand, the question of the applicability of §§ 268 and 270, under the terms of § 276c (3), to the transactions involved in this case obviously is one of law and of a sort not requiring the specialized experience of the Tax Court to determine. Furthermore, it involves making an accommodation between the conflicting policies, in part, of the bankruptcy laws and the revenue enactments. Sections 268 and 270 are integral parts of the former, though related in subject matter to the latter, and were so placed for purposes relevant primarily to that legislation. For these reasons the issue falls beyond the scope of the *Dobson* case.

---

issued to trustees for depositing bondholders and to nondepositing bondholders, on the basis of one share of stock for each $100 face amount of bonds; and ten per cent of the stock was issued to the shareholders in the old corporation. The final decree in the § 77B proceeding was entered March 1, 1937.

According to findings of the Tax Court, the fair market value of the building, as of May 14, 1935 (when the plan was confirmed, cf. § 270, note 1 *supra*), was not in excess of $141,000. The adjusted basis of the taxpayer's predecessor in that year was $239,377.33, at which time the building had a remaining useful life of twenty-five years. The fair market value of petitioner's stock did not exceed $45 per share in 1935. The Tax Court also found that the Claridge Building Corporation was insolvent throughout the reorganization proceedings.

[8] Cf. text *infra* at note 37.

146

## II.

The question presented by § 276c (3) must be determined in the light of the problem created by §§ 268 and 270. A statement of their history is necessary to a general understanding of that problem. It stems basically from *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and subsequent decisions which have applied the principle of that case.[9] By them a corporation may realize income from the cancellation or reduction of indebtedness, depending upon the circumstances in which the transaction occurs. However, the line between income-producing reductions and others is not precise or definite and great uncertainty prevailed concerning it, both in 1934 when § 77B was enacted and in 1938 when Chapter X of the Chandler Act was adopted. The uncertainty was greatest perhaps in relation to transactions occurring in the course of insolvent reorganizations.[10]

Some of the obscurity has been created by the very legislation enacted to remove it. This has been true of the successive "reorganization" provisions, including those for "nonrecognition" and for transfer of "basis," which have appeared in the various revenue acts from 1918 (cf. 40 Stat. 1057) forward. Closely related, as these have been, to the problem whether income is realized by the cancellation or reduction of indebtedness in connection with a reorganization, they have tended to obscure if not to blot

---

[9] Cf., e. g., *Helvering* v. *American Dental Co.*, 318 U. S. 322; Kraman Dev. Co., 3 T. C. 342; Paul, Debt and Basis Reduction under the Chandler Act (1940) 15 Tulane L. Rev. 1, 5, and authorities cited in notes 17, 19.

[10] Cf. Paul, *op. cit. supra*, note 9; Darrell, Discharge of Indebtedness and the Federal Income Tax (1940) 53 Harv. L. Rev. 977; Darrell, Creditors' Reorganizations and the Federal Income Tax (1944) 57 Harv. L. Rev. 1009; Banks, Treatise on Bankruptcy for Accountants (1939) 80–92.

out that problem altogether in situations covered by their terms.[11]

By and large the provisions are the product of and have reflected efforts at compromise, none too successful, between the conflicting pulls of policy involved in the revenue acts and in the bankruptcy legislation. They were drawn and enacted however as parts of the revenue laws and have reflected increasingly the policy of that legislation.[12] Accordingly, the succession of statutes relating to this field, prior to §§ 268 and 270, represents a series of shifts in the legislative pendulum from initial broad tax relief, to encourage needed reorganizations, toward narrowed exemption, in order to discourage use of reorganization for evasion of taxes. The general purpose of the provisions, however, was to postpone the tax consequences which otherwise might ensue upon transactions occurring in such circumstances that immediate imposition was regarded as economically unjustifiable.[13] This continued in the 1934 general revision,[14] which remained in effect during the period of this litigation.

In some respects, as compared with the preexisting legislation, the 1934 provisions broadened, but in others they restricted, the scope of application of the principles of nonrecognition and transfer of basis.[15] Nevertheless,

---

[11] By assuming the existence of income or other taxable gain, but providing for nonrecognition, the inquiry whether gain or profit actually has accrued is wholly avoided.

[12] Cf. authorities cited note 10 *supra.*

[13] Cf. Paul, Studies in Federal Taxation, Third Series, 4, 5.

[14] §§ 112, 113 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 704, 706.

[15] E. g., § 112 (g) of the 1934 Act redefined what might be a reorganization under the revenue act. Thus § 112 (g) (1) (A) included only statutory mergers or consolidations as revenue reorganizations, but dropped the earlier parenthetical clause; § 112 (g) (1) (B) required that the acquisition of stock or property of another corpora-

they were applicable to all exchanges falling within their terms, whether or not the plan was executed in connection with a judicial proceeding. Consequently, when in June, 1934, § 77B was adopted, the 1934 revenue provisions became applicable to reorganizations under that section, but only if they met the tests prescribed in the revenue acts, including such judicially interpolated matters as "continuity of interest" and "business purpose." [16] Many 77B reorganizations did not qualify under these tests or on substantial grounds were thought not to do so.

The consequence was seriously to clog the use of the 77B procedure. Obstacles were imposed not only by the differences in the two statutory definitions of "reorganization," but also by ambiguities in each definition which in themselves created considerable areas of uncertainty. [17] And underlying these remained the mystery of when income would be regarded as realized, which continued to haunt reorganizers unsure of whether they could bring themselves within the statutory exemptions. In short, the necessity of squaring the reorganization first with § 77B, then with the different terms of the revenue provisions, and the uncertainties involved under each statute in doing this, added to the puzzle of "realized income," made the process of creditors' reorganization under the former act a highly dubious adventure. To an undetermined extent

tion be in exchange solely for all or a part of the *voting* stock of the acquiring corporation to qualify as a reorganization. *Helvering* v. *Southwest Consolidated Corp.*, 315 U. S. 194; cf. § 112 (b) (5); *Helvering* v. *Cement Investors*, 316 U. S. 527.

[16] Cf. *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179; *Palm Springs Holding Corp.* v. *Commissioner*, 315 U. S. 185; *Bondholders Committee* v. *Commissioner*, 315 U. S. 189; *Helvering* v. *Southwest Consolidated Corp.*, 315 U. S. 194; Darrell, Creditors' Reorganizations and the Federal Income Tax (1940) 57 Harv. L. Rev. 1009, 1017–1033.

[17] *Ibid.*

the effect of the revenue act's provisions was to nullify or make impossible of realization the objects of § 77B.

In this setting Congress adopted the Chandler Act in 1938. That statute was a general revision of the provisions for bankruptcy reorganization, including those previously made under § 77B. One of its principal objects was to encourage the freer use of bankruptcy reorganization in order to avoid unnecessary or premature liquidations. By this time Congress had become aware of the hazardous and hampering effects of the 1934 revenue provisions upon the operation of bankruptcy reorganizations under § 77B. The objectives of the Chandler Act, in similar situations, could not be achieved without removal of these impediments. Some provision was essential to prevent them from having the same effects upon the working of the new legislation. Accordingly § 268 was devised for this purpose and became a part of the Chandler Act itself. It had no other object, and there was no other occasion for its being, than to free Chapter X reorganizations from the tax deterrents, including tax uncertainties, imposed by the existing revenue act provisions.

The relieving effect of § 268 was confined in three ways, namely, (1) to transactions occurring in a Chapter X reorganization; (2) to transactions involving a modification or a cancellation, in whole or in part, of the debtor's indebtedness; and (3) its benefits were limited to the debtor corporation, the trustee, if any, provided for in the plan, and the successor or transferee corporation. Within these limitations the section provided that "no income or profit, taxable under any law . . . shall . . . be deemed to have accrued to or to have been realized by . . ." the parties specified, and thus removed Chapter X transactions from incidence of the uncertainties characterizing the general "reorganization" provisions. One who followed the procedure could be assured he would

not thereby run into tax consequences which would be worse than the economic illness requiring that cure.

As it was originally considered by the House Committee, the Chandler Act contained no counterpart of the present § 270. Had § 268 thus been left to stand alone, with no accompanying provision for "basis," either there would have been no applicable provision for "basis" or the general "basis" provisions would have remained applicable to Chapter X reorganizations falling within their terms, with the result that they would apply to some Chapter X reorganizations but not to others. The latter view apparently was generally accepted. Under it much of the previous uncertainty would have remained, but with its focus shifted from "realized income" to "basis." Moreover, it was the view of Treasury officials, apparently in the assumption of continued transfer of "basis" under the general provisions, that the effect of § 268 would be to provide a double deduction in some cases,[18] unless complemented by a corresponding "basis" provision, and thus be unfair to the revenue.

Accordingly the Treasury, and others, made various proposals,[19] which eventuated in the adoption of § 270 in its original form. This provided for transfer of basis, as did the code provisions, but required that it be decreased *by the amount of the reduction of indebtedness,* a measure at variance with the terms of the code. It was from the requirement of reduction, and the measure provided for it, that new difficulties were derived. Although the only occasion for making a further provision concerning basis arose from the adoption of § 268 and although the legislative history discloses the purpose of Congress exactly

---

[18] Hearings before the House Committee on the Judiciary on H. R. 8046, 75th Cong., 1st Sess., 352–354; Hearings before Subcommittee of Senate Committee on the Judiciary on H. R. 8046, 75th Cong., 2d Sess., 137–139.

[19] See House Committee Hearings, 353–354; Senate Subcommittee Hearings, 145–146.

contrary to placing Chapter X reorganizations at radical disadvantage from others, the literal effect of the original § 270 came near if not entirely to wiping out the whole benefit conferred by § 268.[20]  Soon it was realized that literal application of the specified new measure of reduction would require decrease of basis in many instances to zero or even to a point below zero, because the amount of the debt cancelled or reduced would equal or exceed the value of the property or that assigned to the basis transferred.  Thus, any tax benefit derived from § 268, in such cases, would be more than offset by the higher taxes resulting in later years from the absence of any depreciation base and in case of sale of the property acquired.  And in cases where no benefit could be derived from § 268, the effect of applying § 270 was, if not to impose a capital levy,[21] then to deny the new owners equal treatment, not only with other transferees under the code provisions, but with all other taxpayers.

Congress, in view of its original object in adopting § 268, could not possibly have intended such consequences for § 270.  The cure was worse than the disease.[22]  The legislative history gives the clear impression that adoption of the original § 270 was a plain blunder, the consequences of which were not foreseen, understood or intended by those who finally gave it the form of law.[23]

---

[20] H. Rep. No. 2372, 76th Cong., 3d Sess., 2–4; S. Rep. No. 1857, 76th Cong., 3d Sess., 1–5; Hearings before a special subcommittee on bankruptcy and reorganization of the House Judiciary Committee on H. R. 9864, 76th Cong., 3d Sess., 3, 5–11, 13–14, 16, 18–31, 54; cf. Paul, Debt and Basis Reduction under the Chandler Act (1940) 15 Tulane L. Rev. 1, 5.

[21] Cf. Darrell, Creditors' Reorganizations and the Federal Income Tax (1940) 57 Harv. L. Rev. 1009, 1016.

[22] Paul, Debt and Basis Reduction under the Chandler Act (1940) 15 Tulane L. Rev. 1, 5.

[23] Hearings before the House Committee on the Judiciary on H..R. 8046, 75th Cong., 1st Sess., 352–354; Hearings before Subcommittee

Legislative relief obviously was in order and was forthcoming at the next session of Congress, in the amendment of § 270 adding the language giving it its present form.[24] The amendment removed some, but not all of the uncertainty confronting Chapter X reorganizers. It placed a floor to the amount of reduction required. In no case would basis be reduced below fair market value. But this was only partial cure of the original infirmities. Above the floor, debt cancellation remained the measure of reduction, thus keeping Chapter X reorganizations generally at a disadvantage with those taking place under the code. But, what was more important, the chief hazard remained, namely, whether § 270 was intended to operate only where § 268 was effective to afford actual tax benefit or, as the Government contends, regardless of whether such relief was afforded. And in this case the hazard has been realized in assessment.

### III.

With this background we turn to § 276c (3). By their own terms §§ 268 and 270 apply only to transactions arising in connection with proceedings "under this chapter," that is, Chapter X of the Chandler Act. The instant transactions arose in proceedings, not under Chapter X, but under § 77B, which had been closed by final decree

---

of Senate Committee on the Judiciary on H. R. 8046, 75th Cong., 2d Sess., 137–139, 145–146; Hearings before a special subcommittee on bankruptcy and reorganization of the House Judiciary Committee on H. R. 9864, 76th Cong., 3d Sess., 52–59, 66–67. A significant letter written by Congressman Chandler shortly after the passage of the Chandler Act was submitted at the 1940 Hearings (Hearings on H. R. 9864, at 52) and was received by the Subcommittee into the record. For some reason it was not published in the record, although the Chandler letter was referred to in a letter which was published (Hearings on H. R. 9864, at 56). The Chandler letter may be found in Banks, Treatise on Bankruptcy for Accountants (1939) 84–85.

[24] Cf. note 1 *supra.*

March 1, 1937. The Chandler Act became effective September 22, 1938. Accordingly §§ 268 and 270, of their own force, are not applicable to these transactions. If they are so at all it is by virtue of § 276c (3), which the Government says must be construed to extend their operation retroactively to include these facts. This petitioner disputes.

The language immediately in question is the italicized part of subdivision (3), as follows:

"(c) the provisions of sections 77A and 77B . . . shall continue in full force and effect with respect to proceedings pending . . . upon the effective date of this amendatory Act, except that—

.        .

"(3) *sections 268 and 270 of this Act shall apply to any plan confirmed under section 77B before the effective date of this amendatory Act and to any plan which may be confirmed under section 77B on and after such effective date,* except that the exemption provided by section 268 of this Act may be disallowed if it shall be made to appear that any such plan had for one of its principal purposes the avoidance of income taxes, and except further that where such plan has not been confirmed on and after such effective date, section 269 of this Act shall apply where practicable and expedient." (Emphasis added.) 52 Stat. 905, 11 U. S. C. § 676.

Three constructions have been advanced. Shortly stated they are that §§ 268 and 270 apply to transactions involved in 77B proceedings (1) only if the proceedings were pending September 22, 1938; (2) only for 1938 and later tax years, but including transactions in proceedings closed before September 22, 1938; (3) for all tax years from 1934 forward as to transactions in all proceedings in which a plan had been or should be confirmed, regardless of whether the proceedings were pending or had been closed on September 22, 1938.

The petitioner advances the first two views, alternatively; the Government the third. The Government interprets the italicized language as if it were wholly disconnected from and unrelated to the preceding portions of § 276c, in other words, as an entirely independent provision unlimited by its statutory context. Petitioner, on the other hand, regards it as merely a part or phase of § 276c,[25] and thus reaches the exactly contrary view of its meaning. The statute, it says, refers in the first paragraph of "c" to "proceedings pending" under 77B and, to quote the brief, "exceptions (1), (2) and (3) are keyed into this first paragraph and refer to pending proceedings also. They merely except from the *pending cases* those to which 77B is not to apply. Since (c) deals only with pending cases and not closed cases, they refer also to pending cases." The Government concedes there is force in this

---

[25] Petitioner's statement of the argument does not take account expressly of the obvious difference between what he calls "exceptions (1) and (2)," on the one hand, and "exception (3)," on the other. (1) and (2) are clearly true substantive exceptions to the general mandate of "c." That is, they provide instances in which § 77B shall not continue to operate, contrary to the general provision of "c" for its continued effectiveness in pending proceedings. Like effect however cannot be given to (3). It does not purport expressly to provide for nonoperation of 77B. Rather its force is to provide for an extended operation of §§ 268 and 270, with reference to 77B proceedings.

The formal difficulty however is more apparent than substantial. Nothing in (3) is at all inconsistent with its limitation to pending 77B proceedings. And the formal connection with "c," though awkwardly made, affords some evidence of purpose to limit the effects of (3) to such proceedings. The same consequence, however, would seem to be dictated, if the formal connection, as an "exception" to "c," were disregarded and (3) were treated as a separate subsection, like the corresponding provisions of other chapters. Cf. note 35 *infra*. The substantive relationship with the subject matter and purposes of the preceding provisions of the section as a whole would remain. Cf. text *infra* Part III.

view, though it suggests, we think untenably,[26] that the question is doubtfully open. The Court of Appeals accepted the Government's view, the Tax Court the alternative or second view advanced by the taxpayer. We think neither can be accepted and that the effect of § 276c (3) is to confine the application of §§ 268 and 270, in 77B proceedings, to proceedings pending when the Chandler Act became effective.

If §§ 268 and 270 were to be applied to all reorganizations completed under § 77B, literally they would cover all such transactions running back to 1934, when the latter section was enacted. As to proceedings closed when the Chandler Act took effect, this would involve disturbance of tax consequences already settled for five years, unless cases are excepted where the statute of limitations had run.[27] We have no means of knowing how much resurrection of old claims or generation of new ones in respect to settled matters this would create. Nor did the authors of

---

[26] It is true petitioner did not present this interpretation in the Court of Appeals or in the Tax Court. It was advanced as a question presented on the petition for a writ of certiorari, the matter has been argued here, and the Government does not claim surprise. The issue of retroactivity and proper interpretation of § 276c (3) has been a focal point of the controversy in the Court of Appeals and in the Tax Court. Petitioner has maintained throughout that there was no tax deficiency for either 1938 or any prior year. Thus the issue has been presented at all stages, although a theory to sustain petitioner's position concerning it has been advanced here which was not put forward in prior stages of the litigation.

[27] It may be noted that the terms of § 276c (3) make no provision concerning the statute of limitations. They apply literally to all prior 77B proceedings. The Commissioner and the Treasury have not interpreted the section to make §§ 268 and 270 apply beyond the time when the general statute has run. But this interpretation is not necessarily controlling, in the face of the breadth of the language used, if it is taken as unlimited by its context. No assessment was made in this case for 1934 because the petitioner corporation was not organized until 1935.

the Chandler Act. But, from the circumstances of the time and the very necessities which brought about adoption of § 77B, the volume must have been considerable.

To construe § 276c (3) to produce such consequences in no way would further the primary objects of §§ 268 and 270, which were to encourage use of Chandler Act procedures, at the same time preventing their abuse for tax advantage. Rather it would pervert those sections by changing their character, to the extent of their retroactive operation, from relief provisions to purely revenue measures of the worst type. In adopting them Congress was not uprooting the whole tax past of reorganized debtors and their creditors. It was, or purported to be, giving relief from harsh or uncertain tax consequences to persons reorganizing presently or in the future.[28]

The language does not require such unlimited construction. The words are not directed expressly to past tax years. Nor are they focused upon transactions in closed proceedings. It is true that § 276c (3), if construed as though it were entirely independent of the remainder of § 276c, does not refer explicitly to *pending* 77B proceedings, except in its concluding clause. Yet it is part and parcel of that section, which in all other respects deals only with pending and future proceedings, not with closed ones. And the concluding clauses of (3) afford additional evidence that it was intended to apply only to plans confirmed or to be confirmed in pending proceedings, as does also its setting in the context of § 276 as a whole.[29]

---

[28] Cf. Part II of this opinion.

[29] The section comprises the whole of Article XVI of Chapter X, entitled "When Chapter Takes Effect." It is as follows:

"Sec. 276. a. This chapter shall apply to debtors by whom or against whom petitions are filed on and after the effective date of this amendatory Act and to the creditors and stockholders thereof, whether their rights, claims, or interests of any nature whatsoever have been acquired or created before or after such date;

"b. a petition may be filed under this chapter in a proceeding in bankruptcy which is pending on such date, and a petition may be filed

Thus § 276, in subsections a, b and c (excepting only
§ 276c (3)), deals exclusively with pending or future pro-
ceedings. Congress' concern in "a" was that Chapter X
should apply notwithstanding the substantive rights of
debtors, creditors and others had arisen before the effec-
tive date of the Act. In "b" it was that the pendency of
bankruptcy and receivership proceedings should not de-
feat resort to the Chandler Act's provisions; in "c" it was
with an accommodation of the provisions of §§ 77A and
77B and those of the Chandler Act as to pending pro-
ceedings. Apart from § 276c (3), therefore, the whole

---

under this chapter notwithstanding the pendency on such date of a
proceeding in which a receiver or trustee of all or any part of the
property of a debtor has been appointed or for whose appointment
application has been made in a court of the United States or of any
State;

"c. the provisions of sections 77A and 77B of chapter VIII, as
amended, of the Act entitled 'An Act to establish a uniform system of
bankruptcy throughout the United States', approved July 1, 1898,
shall continue in full force and effect with respect to proceedings pend-
ing under those sections upon the effective date of this amendatory
Act, except that—

"(1) if the petition in such proceedings was approved within three
months prior to the effective date of this amendatory Act, the provi-
sions of this chapter shall apply in their entirety to such proceedings;
and

"(2) if the petition in such proceedings was approved more than
three months before the effective date of this amendatory Act, the
provisions of this chapter shall apply to such proceedings to the extent
that the judge shall deem their application practicable; and

"(3) *sections 268 and 270 of this Act shall apply to any plan con-
firmed under section 77B before the effective date of this amendatory
Act and to any plan which may be confirmed under section 77B on
and after such effective date,* except that the exemption provided by
section 268 of this Act may be disallowed if it shall be made to appear
that any such plan had for one of its principal purposes the avoidance
of income taxes, and except further that where such plan has not
been confirmed on and after such effective date, section 269 of this
Act shall apply where practicable and expedient." (Emphasis added.)
52 Stat. 905, 11 U. S. C. § 676.

problem treated in § 276 was to give the Chandler Act as wide room as possible for future operation, notwithstanding the previous vesting of substantive rights or institution of bankruptcy or reorganization proceedings. Congress was concerned with the Act's future operation, as a remedial provision, not as a method of creating new and retroactive substantive rights and liabilities.

This being true, it is difficult to understand why Congress might wish to follow exactly the opposite policy with reference to newly created substantive tax rights and liabilities. It would seem wholly incongruous to imply such a purpose in the absence of language unquestionably requiring it, both as a matter of general legislative policy and, more especially, as one of accommodation with the purposes of the particular legislation. In short, apart from subdivision (3), relating to tax incidents of reorganization, all of § 276 was devoted entirely to matters affecting pending and future proceedings. We can find reason for no other view than that this was true also of the provisions for application of the new tax features.

This is borne out by the concluding clauses of § 276c (3) itself, which provide for exceptions to its operation. The second exception in terms relates only to pending proceedings. It contemplated future confirmation exclusively. The first exception, standing alone, literally could be applied in the case of a closed proceeding. But reaching such cases was not a necessary reason for including it. Such a reason existed, however, in the necessity for covering plans already confirmed in pending proceedings, unless parties then reorganizing under § 77B were to be treated differently from others reorganizing at the same time under Chapter X. The two exceptions thus dovetailed to provide complete coverage for disallowing the exemption given by § 268 in pending proceedings. They comprehended distinct situations and provided dif-

ferent sanctions,[30] all however consistent with application only in pending proceedings. Thus the entire language of § 276c (3) was capable of full and complete application, although confined to pending proceedings. To give it greater scope, retroactively, is required neither by the terms nor by the purposes of the specific provision or others related to it in context or by reference.

That the narrower application was the intended one seems most apparent when the nature of the problem with which § 276c (3) sought to deal is considered. There was no problem, arising from enactment of the Chandler Act, with reference to closed 77B proceedings. And there was no reason originally, when § 268 stood alone, for giving the relief it afforded to taxpayers involved in such proceedings. Nothing in the legislative history of § 268, or of § 270, shows any concern, intent or occasion for dealing with such taxpayers. The whole desire related rather, as has been shown, to taxpayers who might be adversely affected by the general revenue provisions in taking advantage of the Chandler Act.

However, that Act itself created another problem, namely, how far its terms should apply in pending 77B proceedings. Congress decided that the Chandler procedure should be followed as far as possible, though not to the extent of displacing the 77B procedure in reorganizations far advanced.[31] The same policy was framed for other chapters. Consequently §§ 276c (1) and (2) were

---

[30] I. e., refusal of confirmation where the plan had not been approved (cf. § 269) and disallowance of the tax exemption, if the plan had been confirmed. For tax purposes these come to the same result, a fact also indicative that both exceptions were intended to operate within the general limitation of pending proceedings.

[31] S. Rep. No. 1916, 75th Cong., 3d Sess., 39; Hearings before the House Committee on the Judiciary on H. R. 8046, 75th Cong., 1st Sess., 375–376, 383; Hearings before Subcommittee of the Senate Committee on the Judiciary on H. R. 8046, 75th Cong., 2d Sess., 6–7.

included, as were also comparable provisions in other chapters.[32]   With them in, the problem was presented whether the Chandler Act's tax relief provisions, including §§ 268 and 270, should apply also in the pending 77B proceedings and, if so, to what extent—only to those converted into Chandler Act proceedings by § 276c (1), or also to those partially converted under § 276c (2) by an exercise of judicial discretion and those falling within 276c (2) but so nearly completed or otherwise situated that application of the Chandler Act in any respect would be impracticable and therefore 77B would continue exclusively effective.

Although these pending 77B proceedings, and particularly those nearing completion, having been already begun, were generally without the scope of the encouragement §§ 268 and 270 were intended to give to persons contemplating reorganization, Congress undoubtedly felt it would be unfair to give the relief to taxpayers following the Chandler Act procedure, but deny it to persons following that of 77B at the same time.   To make this discrimination might force conversion of pending 77B proceedings into Chapter X proceedings, solely on account of tax consequences, where but for them such conversion would not be proper or desirable.   Accordingly, by § 276c (3) Congress extended the tax relief provided by §§ 268 and 270 also to pending 77B proceedings in order to put persons continuing 77B reorganization on the same basis with others proceeding under Chapter X.   There was no other occasion or object for the extension.

In view of these considerations, both of context and of consequence, we do not think § 276c (3) can be regarded as applicable to closed proceedings.   The purpose rather, as in the other provisions of § 276, was to look to the future and in doing so to make the necessary adjustment, so far as was possible, between the provisions of the Chandler

[32] Cf. note 34 and text *infra.*

Act and preexisting laws as to proceedings pending when the former took effect. Thus construed, § 276c (3) becomes consistent, both in form and in the purpose and effects of applying the new tax provisions, with the other provisions of § 276 and with the general policy of the Chandler Act as to applicability of its terms.[33] Any other view would make § 276c (3) a unique provision in the statute's setting and one inconsistent with, if not also contradictory to, the Act's general purposes and the limited objects of the particular provisions immediately in issue.

Further support for this view would seem to be afforded, when the consequences of applying it or the contrary one to similar provisions appearing in other chapters of the Chandler Act[34] are taken into account. If those pro-

---

[33] "Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; but proceedings in cases then pending to which the provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereof and supplementary thereto." Act of June 22, 1938, c. 575, § 6b, 52 Stat. 940.

[34] Chapters XI, XII and XIII deal respectively with Arrangements, Real Property Arrangements by Persons Other Than Corporations, and Wage Earners' Plans. Each of these chapters embodies sections corresponding in principle to §§ 268, 270 and 276. Those comparable to § 276 are § 399 in Chapter XI, § 526 in Chapter XII, and § 686 in Chapter XIII. Each, like § 276, contains the whole of an article entitled "When Chapter Takes Effect." Each contains four subsections (with a fifth in § 686), corresponding to subsections a, b and c of § 276 *and subdivision c (3)* of that section. Thus, §§ 399 (4), 526 (4), and 686 (4)·correspond to subdivision 276c (3). They differ from it however in that they are formally independent subsections, whereas § 276c (3) is formally a part of Subsection 276c, dependent upon its general mandate, and thus perhaps even more clearly limited by the preceding provisions. Cf. note 25 *supra*.

Sections 268, 270 and 276, therefore, do not represent isolated instances of legislation peculiar to corporate reorganizations under

visions are to be given retroactive application comparable to what the Government says should be given to §§ 268, 270 and 276c (3), the disruption of settled tax situations, by virtue of the Chandler Act's adoption, may be multiplied many times over what would follow from giving such an effect only to §§ 268, 270 and 276c (3). Although the immediate consequences of decision in this case are limited to the specific effects of these sections, it is at least doubtful that they could be given a different construction, as to retroactive application, from what might be given to the comparable sections of other chapters. The possibility that uniform interpretation may be required gives pause, at least, before adopting a view in this case which, if extended to the other provisions, would open so wide a door for retroactive taxation.

As against this interpretation, the Government's argument rests primarily on two bases: (1) that the words of § 276c (3) require its construction; and (2) that unless this is given, discriminations as to tax consequences will be created between taxpayers involved in closed proceedings and those in pending and future ones, with the result that mere speed in getting the proceedings pending prior to September 22, 1938, to a final decree would determine whether taxpayers equally deserving would be afforded the relief provided by §§ 268 and 270.

The answers are obvious. In the first place, the wording of § 276c (3) does not require the Government's con-

Chapter X. They are rather particular instances of a general pattern of legislation, relating to a common problem running through Chapters X, XI, XII and XIII, namely, to what extent the Chandler Act's terms should be applied to pending reorganizations, arrangements, wage earners' plans, etc. Because of detailed differences in the situations affected, the provisions corresponding to §§ 268, 270 and 276 vary somewhat in detail. But the similarities rather than the variations, whether in situation or in terms, are significant for present purposes.

struction.  That view can be taken only if subdivision (3) is torn, formally and substantively, from its context in the statute and the problems with which these surrounding provisions, including §§ 268 and 270, undertook to deal. Thus to treat the provision not only would disregard the purposes of all these related provisions.  It would convert subdivision (3), in its practical application, into an entirely independent tax measure, solely in the nature of an amendment to the general revenue legislation, and with the harshest retroactive tax consequences.  This in fact seems to be the Government's view of the character of the legislation.[35]  But that view wholly disregards the fact that neither §§ 268 and 270 nor § 276c (3) had any purpose originally or later merely to produce larger revenues or to operate exclusively as revenue measures.  It is true they modified the preexisting revenue provisions, so far as they were applicable by their terms to do so.  But this was a function of their primary object, which was to give relief to parties undertaking reorganization, not simply to impose new and different taxes upon them, much less to do so with respect to transactions long since settled

---

[35] Thus, in its brief the Government asserts, concerning petitioner's argument that §§ 268 and 270 apply only to "pending" proceedings: "This contention, although plausible, neglects the fact that Sections 268 and 270 are *essentially tax provisions*." (Emphasis added.)  To this it may be answered that the sections, in origin, purpose and function were "essentially reorganization provisions" or, to put it differently, "essentially tax relief provisions."  The Government's emphasis upon the sections as taxing measures ignores their primary object and function, which were to provide tax relief for parties undertaking reorganization and to prevent the clogging effects of the existing tax laws upon the operation of the Chandler Act.  It also fails to note that retroactive application, in closed proceedings, could have no possible relation to the latter aim.  The matter is one of emphasis.  But it is not permissible, in construing provisions designed to encourage reorganization, by giving relief from taxes, to take them by such an emphasis as if they were framed exclusively for raising revenue.

both as to taxes and as to reorganization. The objects of
§ 276c (3) cannot be ignored or distorted by thus stripping
the provision, formally and substantively, from its statu-
tory setting and the limitations this clearly imposes.

So far as respects the Government's concern over the
possible discriminations which will be created between
taxpayers by acceptance of petitioner's view, it is per-
haps enough to say that some such discrimination is in-
evitable with whatever solution may be accepted; and we
think what follows from applying §§ 268 and 270 only
to "pending proceedings" not only is preferable to any
other but is most consistent with the normal course of
legislation. Retroactivity, even where permissible, is not
favored, except upon the clearest mandate. It is the nor-
mal and usual function of legislation to discriminate be-
tween closed transactions and future ones or others pend-
ing but not completed. The discrimination which the
Government fears will follow from acceptance of the tax-
payer's view admittedly will result. But it is one con-
sistent with the normal consequences of legislation in the
drawing of a line between the past or the present and the
future. It also was one necessary for Congress to make
if it were not to make another or others equally bad or
worse. The Government's concern in this case is not that
the taxpayer will suffer harsher discrimination under peti-
tioner's construction than under its own. It is rather that
he will not suffer it. For, as interpreted by the Govern-
ment,[36] §§ 268, 270 and 276c (3) applied in conjunction
would be much more likely to produce new, and retro-
active, tax burdens than tax benefits. The present case is
an illustration. To this the Government might be entitled
if the statutory mandate were clear. It cannot have that

---

[36] That is, with § 270 as operating independently of § 268, to require
reduction in basis even though no actual tax benefit has been derived
under 268.

advantage by dubious construction which ignores so much of the statute's setting, purpose and history. The letter does not require this. The consequences forbid it.

There remains for consideration the refusal of the Court of Appeals to reverse the findings of the Tax Court as to the original cost of the apartment building and the propriety of deductions claimed in 1937 for decorating expenses.[37] The Tax Court, in arriving at the cost of the building, refused to allow an alleged ten per cent contractor's commission paid to the debtor company's principal promoter and original sole shareholder because it was not convinced by petitioner's witness "that any amount was actually paid by the old company for contractor's services. . . ." 1 T. C. 163, 175. The Tax Court also concluded, after hearing vague testimony on two small deductions in 1937 for decorating and repairs, that these were not properly taken, because the same deductions for the same purposes had been claimed and allowed in 1936. These issues were well within the principle of the *Dobson* case. The Tax Court was upheld in these respects by the Court of Appeals and we accept these findings.

Accordingly, the judgments are reversed and the causes are remanded to the Circuit Court of Appeals for further proceedings in conformity with this opinion.

*Reversed and remanded.*

---

[37] Cf. text at note 8 *supra.*