**HOSPITAL EMPLOYEES LABOR PROGRAM OF METROPOLITAN CHICAGO, including its sponsoring organizations, Local 743, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Local 73, Service Employees International Union, AFL–CIO, Plaintiff-Appellee,**

v.

**RIDGEWAY HOSPITAL, Defendant-Appellant.**

No. 76–2284.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1977.

Decided Jan. 11, 1978.

Robert W. Macdonald, Chicago, Ill., for defendant-appellant.

Marvin Gittler, Joel A. D'Alba, Chicago, Ill., for plaintiff-appellee.

Before TONE, Circuit Judge, KUNZIG, Judge,* and BAUER, Circuit Judge.

TONE, Circuit Judge.

■ The issue is whether § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), confers federal jurisdiction over a union's claim against a not-for-profit hospital for breach of a contractual duty to arbitrate when the hospital became subject to the Act only after the duty arose. The District Court entered summary judgment against the hospital and ordered it to arbitrate. We reverse the judgment.

The union and the hospital entered into a collective bargaining agreement for a term ending June 30, 1974. Three days before that date, the union filed a grievance charging the hospital with refusing "to comply with all economic terms" of the agreement and violating the provisions of the agreement relating to recognition of the union as the exclusive bargaining representative of the hospital's employees. The union's demand that the grievance be submitted to arbitration in accordance with terms of the agreement was rejected by the hospital.

At that time not-for-profit hospitals were excluded from the coverage of the Act by § 2(2), 29 U.S.C. § 152(2). On August 25, 1974, § 2(2) was amended to delete the exemption for not-for-profit hospitals, thus bringing the defendant hospital within the coverage of the Act. Non-Profit Hospital Amendments, Pub.L. 93–360, 88 Stat. 395 (1974).

Subsequently the union filed this action under § 301 of the Act seeking to compel the hospital to submit to arbitration of the grievance. Holding that the amendment to § 2(2) extended jurisdiction under § 301(a) to a claim arising before the amendment, the District Court denied the hospital's motion to dismiss, and subsequently granted summary judgment for the union.

*Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), established that § 301 did not merely confer federal jurisdiction over claims arising under state law but instead created a new federal cause of action:

We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. . . . Federal interpretation of the federal law will govern, not state law. . . . But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. . . . Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

353 U.S. at 456–457, 77 S.Ct. at 918. Thus in the *Lincoln Mills* case there was held to be a federal claim for arbitration, even though state law did not enforce a contract to arbitrate a future dispute. The rule of *Lincoln Mills* was left undisturbed by *Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), on the general

---

* The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation.

language of which the District Court relied in the case at bar.[1] *Dowd* merely held that state courts have concurrent jurisdiction to enforce the federal rights created by § 301(a). In so holding the Court expressly recognized the continuing authority of *Lincoln Mills* and the proposition that "[a]ny state law applied . . . will be absorbed as federal law . . . ." 368 U.S. at 506–507, 82 S.Ct. at 522, quoting from *Lincoln Mills*, 353 U.S. at 457, 77 S.Ct. 912.

It is possible to read *Dowd* as indicating that, in addition to having jurisdiction over the federal claim concurrent with that of a federal court, a state court may enforce a state claim for breach of contract arising from the same facts.[2] Any such notion was laid to rest, however, by *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–105, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), which held that *Lincoln Mills* requires "issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy." *Id.* at 103, 82 S.Ct. at 576. See also *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703 n. 4, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Section 301(a), therefore preempted preexisting state law which determined the liability arising from collective bargaining agreements.

█ The foregoing cases make it clear that the union is simply wrong in arguing that the August 1974 amendment to § 2(2) "created no new substantive cause of action for breach of a collective bargaining contract" and merely provides a forum in which it may assert its claim under state law. To make that argument the union must ignore, as its brief does, the principles established by *Lincoln Mills* and *Lucas Flour.*

Applying those principles here, a claim under state law arose from the hospital's breach of the collective bargaining agreement. If federal law applies retroactively to the event that gave rise to the state law claim, then state law was preempted upon the amendment of § 2(2) and only the § 301(a) claim survives. If not, the state claim presumably still exists and is enforceable in a state court but not in a federal court, because § 301(a) creates and is concerned only with claims arising under federal substantive law.[3]

Thus, if the union has a claim that can be asserted in an action under § 301(a), it is a federal claim. Such a claim exists only if the amendment to § 2(2) is to be given retroactive effect, for until the adoption of the amendment the defendant hospital was not an "employer" subject to the Act and therefore had no federal liability under § 301(a) for breach of the collective bargaining agreement.

█ On the issue of retroactivity, we view as indistinguishable in principle a series of cases in the Ninth Circuit holding that the substantive liability created by § 301 in 1947 "was not attached to breaches of contract which occurred before the statute was enacted." *Schatte v. International Alliance, T.S.E.*, 182 F.2d 158, 164 (9th Cir.), *cert. denied*, 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608 (1950); *Studio Carpenters Local Union v. Loew's, Inc.*, 182 F.2d 168 (9th Cir.), *cert. denied*, 340 U.S. 828, 71 S.Ct. 64, 95 L.Ed. 608 (1950); *MacKay v. Loew's, Inc.*, 182 F.2d 170 (9th Cir.), *cert. denied*, 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950). And see, as to the amendment of § 2(2) itself, *NLRB v. St. Luke's Hospital Center*, 551 F.2d 476 (2d Cir. 1976). These cases are consistent with the general rule that "amendatory statutes generally oper-

---

**1.** The District Court stated, citing *Dowd*, "The basic purpose of Section 301(a) is to expand the availability of forums for the enforcement of contracts made by labor organizations."

**2.** The authority of a federal court to enforce such a claim would depend upon the existence of diversity of citizenship and jurisdictional amount, see *Schatte v. International Alliance, T.S.E.*, 182 F.2d 158, 164 (9th Cir. 1950), *cert.*

*denied*, 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608 (1950), or of pendent jurisdiction. Neither theory is available here.

**3.** Although such a state claim would also be enforceable in a federal district court if diversity of citizenship and jurisdictional amount were pleaded and proved, that basis for federal jurisdiction is not asserted. See note 2, *supra.*

ate prospectively only absent a strong indi-·cation of legislative intent to the contrary," *In re Reilly*, 442 F.2d 26, 28 (7th Cir.), *cert. denied*, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971), especially when they disturb "matured" or "unconditional" rights or impose "unanticipated obligations." *Bradley v. Richmond School Board*, 416 U.S. 696, 720–721, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973). See *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *Claridge Apartments Co. v. Commissioner of Internal Revenue*, 323 U.S. 141, 164, 65 S.Ct. 172, 89 L.Ed. 139 (1944); *Union P. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199–200, 34 S.Ct. 101, 58 L.Ed. 179 (1913); *deRodulfa v. United States*, 149 U.S.App.D.C. 154, 161, 461 F.2d 1240, 1247, *cert. denied*, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); 2 J. Sutherland, *Statutes and Statutory Construction* §§ 41.01–41.09 (4th ed. 1973).

■ When the hospital refused to submit to arbitration, the union's state law claim had "matured." [4] To apply the amendment to § 2(2) retroactively would extinguish this matured right, which *Bradley v. Richmond School Board* proscribes. Moreover, since it would subject the hospital to liability under § 301(a), it would hold the hospital to "unforeseen obligations," which is also contrary to *Bradley*. Under analogous circumstances, the National Labor Relations Board has held that it did not have jurisdiction over an unfair labor practice charge involving a postal employee based on facts occurring before the effective date of the Postal Reorganization Act. *United States Postal Service*, 200 N.L.R.B. 413 (1972). There is no indication, or even argument on the part of the union, that Congress intended the amendment to § 2(2) to have retroactive effect. We hold that it does not.

The union also argues that in any event the federal court has jurisdiction under § 301(a), because the hospital's breach of the collective bargaining agreement, *i. e.*, its refusal to arbitrate, continued beyond the effective date of the amendments to § 2(2) and to the present date. Reliance is placed on two cases: *Carpenter's Local 74 v. NLRB*, 341 U.S. 707, 713–714, 71 S.Ct. 966, 95 L.Ed. 1309 (1951), decided under the amendment to the Act prohibiting secondary boycotts, § 8(b)(4)(A), 29 U.S.C. § 158(b)(4)(A), held that continuing such a boycott after the effective date of the amendment is unlawful even though it began before that date. *Jeffrey-DeWitt Insulator Co. v. NLRB*, 91 F.2d 134 (4th Cir. 1937), the second case, turned upon whether a labor dispute which began before the effective date of the original Wagner Act was still in effect after that date, and held that it was and that therefore federal jurisdiction over the dispute existed.

In neither of these cases did the challenged application of the new statute change "the legal effect of past events," *In re Reilly, supra*, 442 F.2d at 28, quoting from *Aetna Casualty and Surety Co. v. Industrial Accident Commission*, 30 Cal.2d 388, 182 P.2d 159 (1947), and therefore the policy against retroactive application did not come into play. In each of them, events that occurred subsequent to the adoption of a new statute, and to which the statute in terms applied, were held subject to the statute.

In the case at bar, however, the only arguably relevant occurrence after the effective date of the amendment was the hospital's continued refusal to arbitrate in accordance with a state law duty arising from a past event, *viz.*, the pre-amendment breach of the pre-amendment collective bargaining agreement. *Cf. Moore v. Sunbeam Corp.*, 459 F.2d 811, 828 (7th Cir. 1972). If the amendment were held to make § 301(a) applicable, the effect would be to change the legal effect of that past event by creating a new federal substantive right, and, by virtue of the doctrine of *Lincoln Mills* and *Lucas Flour*, simultaneously extinguishing the state right. We do not believe Congress intended the amendment to change the legal effect of a past event by converting a duty arising from that event under state law into a duty arising under federal law.

---

**4.** See the Illinois Uniform Arbitration Act, Ill.Rev.Stat. ch. 10, §§ 101–102 (1975).

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS THE ACTION.

