**Adrian TAYLOR, by Marie HOLBROOK and Philip Taylor, his parents, and Patsy Smith, his family care provider, Plaintiffs,**

v.

**The BOARD OF EDUCATION OF the COPAKE–TACONIC HILLS CENTRAL SCHOOL DISTRICT, Gerald Duffy, as Superintendent of the Copake-Taconic Hills Central School District; and Gordon Ambach as Commissioner of the New York State Education Department, Defendants.**

No. 86–CV–552.

United States District Court,
N.D. New York.

Dec. 10, 1986.

Disabilities Law Clinic, Albany Law School, Albany, N.Y., for plaintiffs; Nancy M. Maurer, Connie Mayer, of counsel.

Whiteman Osterman & Hanna, Albany, N.Y., for defendants Copake-Taconic Hills CSD & Gerald Duffy; Joel Hodes, Debra A. Cohn, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for defendant Ambach; Lawrence Doolittle, Asst. Atty. Gen., of counsel.

McCURN, District Judge.

This action was brought on behalf of plaintiff Adrian Taylor by his parents, plaintiffs Marie Holbrook and Philip Taylor, and by his family care provider, plaintiff Patsy Smith. The complaint alleges that defendants Board of Education of the Copake-Taconic Hills Central School District (school district), school district Superintendent Gerald Duffy, and New York State Education Department Commissioner Gordon Ambach have, by their actions, deprived Adrian Taylor of his rights guaranteed him under the Education of All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* (EAHCA), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, 42 U.S.C. § 1983, and Article 89 of the New York Education Law. The plaintiffs are seeking declaratory and injunctive relief, as well as reimbursement for transportation and other expenses and attorneys' fees. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3). A trial in this matter

was conducted on September 3, 1986, and the following constitutes the court's findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

### Background

Adrian Taylor is a seven-year old boy with severe multiple handicaps. He is mentally retarded, cortically blind, and hearing impaired. He also has cerebral palsy, spastic quadriplegia, and seizure disorders. Although Adrian's natural parents, Marie Holbrook and Philip Taylor, have legal custody of him, they live in Bethesda, Maryland. They placed Adrian in the voluntary custody of Eleanor Roosevelt Developmental Services (ERDS), a branch of the New York State Office of Mental Retardation and Developmental Disabilities, when he was thirteen months old. Patsy Smith is an ERDS employee who has been Adrian's family care provider since 1979.

Since 1982, Adrian has received special education and related services from the Cerebral Palsy Center for the Disabled (CP Center) in Albany, New York. In October of 1983, the school district's Committee on the Handicapped (COH) initiated a review of Adrian's educational needs and placement for the 1983–84 school year. In February of 1984, the COH recommended that Adrian's placement be changed from the CP Center to a severely multiply handicapped class of the Columbia-Greene-Rensselaer Board of Cooperative Educational Services (BOCES) located at the Red Mill School in East Greenbush, New York. In March of 1984, the school district's board of education approved that recommendation.

The change of placement was opposed by Adrian's parents, his family care provider, and the ERDS, and they requested a hearing so that the change could be reviewed. A seven-day hearing was held between the dates of October 29, 1984 and November 15, 1984. On December 16, 1984, the hearing officer upheld the recommendation that Adrian be placed in the BOCES class. That decision was appealed, and on June 24, 1985, Commissioner Ambach sustained the appeal and held that the Individualized Education Plan (IEP) that was developed for Adrian lacked specificity in certain areas and was incomplete in others. The matter was remanded to the COH for development of an appropriate IEP for the 1985–86 school year.

On August 6, 1985, the COH met to insure that Adrian's IEP for the 1985–86 school year was in accordance with Commissioner Ambach's decision. The IEP was revised, and the COH once again recommended that Adrian's placement be changed from the CP Center to the BOCES class. A new hearing was requested to review the latest recommendation, and that hearing was held over five days between October 21, 1985 and November 4, 1985. The hearing officer was the same person that presided over the 1984 hearing, and on December 18, 1985, he upheld the COH recommendation that Adrian be moved to the BOCES class. An appeal to the Commissioner was then taken on February 1, 1986, and on April 7, 1986, he sustained in all respects the recommended placement and dismissed the appeal. Subsequently, the instant action was commenced, and on June 3, 1986, this court issued an injunction ordering the school district to pay Adrian's tuition and expenses at the CP Center pending a determination on the merits.

### Discussion

The school·district readily admits that it had an obligation, when developing an IEP for Adrian, to give serious consideration to the opinions of persons who are knowledgeable about Adrian and his unique set of problems. The district asserts that it in fact did give serious consideration to those opinions. However, based on the record before the court, it is all but impossible to make a finding that the school district gave serious consideration to the opinions of those most knowledgeable about Adrian, because if it had, it could not have recommended that Adrian's placement be changed from the CP Center to the BOCES class.

During the trial, the court heard several witnesses testify on behalf of Adrian; no witnesses testified on behalf of the defendants. Nancy Ames is a teacher at the CP Center and was Adrian's teacher from March of 1986 until June of 1986. She testified that there were always several therapists in the classroom working with Adrian and that it took a team of people to constantly reposition Adrian so that he would be comfortable. The child requires extensive physical therapy, and a variety of special chairs and boards are necessary when working with him. He also requires occupational therapy that concentrates on his upper body, and Ames testified that an occupational therapy assistant must be in the classroom with Adrian at all times. Adrian needs constant speech therapy as well.

Ames stated that medical clinics should be immediately available to Adrian at his school as they should be integrated into his educational program. Such is the case at the CP Center. Medical clinics are not available, however, at the Red Mill School where the BOCES class is held. Ames also stated that a program that did not provide Adrian with clinics, swimming, and a variety of therapeutic services would not be appropriate for him and that he could not have made progress similar to what he has made at the CP Center in a different type of learning environment.

John Kastner has worked at the CP Center since 1979 and was Adrian's teacher for two and a half years. He testified that Adrian has made significant progress because he has been taught with a team approach with which he has received positive reinforcement on a consistent basis. He further testified that Adrian needs to be taught by using a functional curriculum so that he can learn basic skills that will let him survive in the real world.

In the fall of 1985, Kastner visited the BOCES class where the defendants urge that Adrian be placed. He spent three hours in the classroom and saw no therapy being conducted nor any of the students being repositioned, which, as stated, Adrian needs in order to be comfortable. Kastner stated that the type of teaching being conducted in the BOCES class would be of little use to Adrian as it would not benefit him outside of the classroom. In conclusion, Kastner believes that the BOCES class would not be an appropriate placement for Adrian.

Dr. Edwin Rosenblum is medical director at the CP Center and has known Adrian since the child was five years old. He testified that Adrian has so many medical problems that he definitely needs a program of which medical services are an integral part. He went on to testify that Adrian is not even close to being the type of borderline child who could possibly survive in the BOCES program and that a program that lacks medical integration would be completely inappropriate for Adrian. Rosenblum stated that Adrian needs physical therapy five times a day, and on a different note, concluded with the assertion that the CP Center placement costs no more than the BOCES placement.

In addition to the above three witnesses who testified on Adrian's behalf, the court finds upon review of the administrative record that several other persons who know Adrian well and who did not appear during trial have strong opinions that the CP Center is the only appropriate placement for Adrian.

Dr. Irma Waldo is Adrian's personal doctor, and she attended the COH meetings at which Adrian's placement was discussed. She made clear that she believed that the CP Center was the only program that could provide Adrian with the integration of services that he needs and that the BOCES class was an inappropriate placement that would present too drastic a change for the child.

Adrian's orthopedist, Dr. Robert Leupold, stated during COH meetings that Adrian needs a program with a great deal of direct feedback and that the BOCES class was not such a program. Additionally, Mitzi Flynn, the elementary education principal at the CP Center who knows Adrian well, stated at COH meetings that the

BOCES placement was inappropriate because it does not provide sufficient therapeutic services and feedback from the classroom staff and medical professionals.

The school district's COH heard or had access to the opinions of all of these professionals except Nancy Ames, who worked with Adrian subsequent to the development of the IEP in question here. The clear consensus of opinion among these persons who know Adrian best is that the BOCES placement would be inappropriate for him. Yet, notwithstanding the school district's assertion that it considered what these persons had to say, it still recommended that Adrian be placed in the BOCES classroom. Moreover, while the IEP does provide for therapy for Adrian, the court is convinced, after reviewing the opinions of these professionals, that the IEP does not provide the level of therapy, at least in certain areas, that Adrian needs. Further, the IEP does not provide for swimming; it does not provide for the full integration of medical and classroom services; and it does not provide for a functional education curriculum. It is difficult, if not impossible, for the court to ascertain whose opinions and advice the COH did heed in deciding that Adrian should be placed in the BOCES class. The court finds that the opinions of those persons most knowledgeable about Adrian and his problems were not given proper consideration in the development of Adrian's current IEP.

### Legal Conclusions

As stated, the complaint in this case alleges violations of the EAHCA, the Rehabilitation Act, 42 U.S.C. § 1983, and New York State law. These allegations will be addressed in order, although the relevant New York State law will be considered within the context of the EAHCA, because:

> While a separate claim for violation of state regulations will not lie, they are material and relevant to the determination of whether the federal right to a free appropriate public education has been provided under the IEP.

*Town of Burlington v. Department of Education for the Commonwealth of Massachusetts,* 736 F.2d 773, 788 (1st Cir.1984), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

20 U.S.C. § 1415(e)(2) provides:

> (2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

In *Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court established the scope of a court's inquiry under this section:

> Therefore, a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. (footnotes omitted).

*Id.* at 206–7, 102 S.Ct. at 3050–1.

■ The plaintiffs argue that neither of the requirements set forth above have been met in this case. They contend that the school district's COH did not meet the procedural requirements of the statute and the

accompanying regulations by, *inter alia,* failing to give sufficient, if any, consideration to the opinions of those persons who know Adrian best, such as his doctors and teachers. The court has already found that such consideration was not given by the COH, and such a failure is in contravention of the procedural requirements of the EAHCA. *See* 34 C.F.R. § 301.533; *McKenzie v. Smith,* 771 F.2d 1527 (D.C. 1985). It also appears to at least implicitly contravene New York State law. *See* N.Y. Ed.Law § 4402 1.b(1) (McKinney 1986).

■ Moreover, and directly related to the court's conclusion as to the failure of the COH to comply with procedural requirements, the court concludes that the IEP developed for Adrian is not reasonably calculated to enable him to receive educational benefits. While the IEP certainly touches upon some of the necessities for the child to benefit from an educational program, as the court has already found, it reduces or omits at least several of the services that those who know Adrian believe are essential to his benefiting from an educational program. *See McKenzie,* 771 F.2d at 1527; *Russell by Russell v. Jefferson School District,* 609 F.Supp. 605 (N.D. Cal.1985). For instance, one such omission involves a functional curriculum. The failure of the BOCES class to utilize a curriculum that will provide Adrian with the tools to become, at least to a degree, self sufficient, is alone an important reason why the BOCES class would not provide an appropriate education. *See Armstrong v. Kline,* 476 F.Supp. 583, 603–05 (E.D.Pa. 1979), *remanded on other grounds,* 629 F.2d 269 (3d Cir.1980).

While the court is well aware that the defendants are under no obligation to place Adrian in the setting that will maximize his potential; *Rowley,* 457 U.S. at 198–200, 102 S.Ct. at 3046–3047; an obligation does exist to insure that Adrian receives, at minimum, an appropriate education.

■ Adrian is entitled to learn in the least restrictive environment possible. *See* 20 U.S.C. § 1412(5)(B); 34 C.F.R. § 300.550 *et seq.* While generally, the choice of the least restrictive environment will involve an attempt to mainstream a handicapped child with children who are not handicapped, such is not always the case. The crucial determination involves a full and careful consideration of the child's own needs; *Abrahamson v. Hershman,* 701 F.2d 223, 229–30 (1st Cir.1983); and in some instances, a special facility will constitute the least restrictive environment for a particular handicapped child. *St. Louis Developmental Disabilities Treatment Center v. Mallory,* 591 F.Supp. 1416, 1442–56 (W.D.Mo. 1984), *aff'd,* 767 F.2d 518 (8th Cir.1985). When considering the "potential harmful effect on [Adrian and] on the quality of services which [he] needs;" 34 C.F.R. § 300.552(d); the court concludes that the CP Center provides a less restrictive environment than the BOCES class.

■ Therefore, neither prong of the *Rowley* test has been met under the facts of the case *sub judice,* and Adrian is entitled to relief under 20 U.S.C. § 1415(e)(2). The court's discretion in fashioning such relief is broad. *Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985); *McKenzie,* 771 F.2d at 1535. The court concludes that Adrian should remain at the CP Center because, at this point in his life, it is there that he will receive the appropriate education to which he is entitled. Obviously, if at a later date the child's conditions change to a significant degree, a determination can be made at that time by the proper parties as to whether he should be placed in a different educational environment.

■ The court declines to hold that relief in this case can also be awarded under Section 504 of the Rehabilitation Act. Until recently, a party that had complete relief available under the EAHCA could not simultaneously seek relief under the Rehabilitation Act. *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). At least partly in response to *Smith,* Congress amended the EAHCA, and one of the amendments, which became

effective on August 5, 1986, provides as follows:

(f) Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.

However, nothing in the statute indicates that Congress intended to give this particular section retroactive effect. In light of that, and in light of the fact that specific provision was made for the retroactive application of an amendment of the statute regarding attorneys' fees, which will be discussed shortly, the court will adhere to the general rule that retroactive effect should not be given to an amendment to a statute unless it is clear from the amendment that Congress intended for it to apply retroactively. *See Hospital Employees Labor Program of Metropolitan Chicago v. Ridgeway Hospital,* 570 F.2d 167, 169–70 (7th Cir.1978); *F.W. Myers & Co., Inc. v. United States,* 607 F.Supp. 1470 (C.I.T. 1985).

■ The court further declines to hold that the plaintiffs are entitled to relief under 42 U.S.C. § 1983. While such a claim is not precluded merely because it is brought simultaneously with an EAHCA claim, in order to obtain relief under Section 1983, a plaintiff must allege and establish that a constitutional violation *outside* of the scope of the EAHCA has occurred. *Bonar on behalf of Bonar v. Ambach,* 771 F.2d 14 (2d Cir.1985). Such a violation has neither been alleged nor established in the instant case. Therefore, the court finds no merit to the Section 1983 claim.

■ The plaintiffs seek reimbursement for the transportation and other expenses incurred when the school district refused to transport Adrian to the CP Center. Evidence was introduced at trial that Patsy Smith, the family care provider, paid $1,085.00 in transportation expenses and also paid a babysitter $155.00 to sit with two other children while she took Adrian to the CP Center. These expenses are supported by documentation, and the court concludes that the family care provider should be reimbursed for them by the school district. *See Burlington School Committee,* 471 U.S. 359, 105 S.Ct. at 1996.

■ Finally, the plaintiffs contend that they are entitled to an award of attorneys' fees. Before the recent amendments to the EAHCA, no provision was made for an award of attorneys' fees to a prevailing party. However, such an award can now be made. The statute provides in relevant part:

(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

The statute further provides:

SEC. 5. The amendment made by section 2 shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984.

The "section 2" referred to above is the amendment dealing with awards of attorneys' fees under the statute.

Since this action was not filed in this court until this year, the attorneys' fees provision in the statute is applicable. The court concludes, in its discretion, that the plaintiffs are entitled to an award of attorneys' fees. The plaintiffs are instructed to make a motion for the award supported by detailed documentation of the legal services rendered in this case. Upon review of that documentation, as well as any papers

filed in opposition to the award sought, the court will award appropriate fees.

Accordingly, judgment is entered in favor of the plaintiffs, and relief is provided as set forth herein.

IT IS SO ORDERED.