**UNITED STATES of America, ex rel. Edward BOGART, Plaintiffs,**

v.

**KING PHARMACEUTICALS, Monarch Pharmaceuticals, Wyeth Pharmaceuticals, American Service Group, and Prison Health Services, Defendants.**

**No. CIV.A. 03–1538.**

United States District Court, E.D. Pennsylvania.

Jan. 23, 2006.

Louis Agre, Cherry Hill, NJ, Sam Boyd, Boyd & Associates, Dallas, TX, Barbara Rowland, U.S. Attorney's Office, Philadelphia, Joel M. Androphy, Berg and Androphy, Houston, TX, Paul D. Weiner, Buchanan Ingersoll Prof Corp, Richard M. Simins, Buchanan Ingersoll, Philadelphia, Richard Heidlage, Office of the Attorney General, Commonwealth of MA, Boston, MA, Marianne Woodard, Atty General's Office of the State of NM, Medicaid Fraud Control Unit, Albuquerque, NM, for United States of America ex rel. Edward Bogart, Edward Bogart individually, State of Illinois ex rel Edward Bogart, State of California ex rel Edward Bogart, State of Florida ex rel Edward Bogart, State of Texas ex rel Edward Bogart, State of Massachusetts ex rel Edward Bogart, State of Tennessee ex rel Edward Bogart, State of Delaware ex rel Edward Bogart, State of Nevada ex rel Edward Bogart, State of Louisiana ex rel Edward Bogart, State of Hawaii ex rel Edward Bogart, District of Columbia ex rel Edward Bogart, State of Virginia ex rel Edward Bogart, State of New Mexico ex rel Edward Bogart, Plaintiffs.

David W. Engstrom, Harkins Cunningham, Eleanor Morris Illoway, Harkins Cunningham LLP, Philadelphia, for King Pharmaceuticals, Monarch Pharmaceuticals, Wyeth Pharmaceuticals, American Service Group, Prison Health Services, Defendants.

### *MEMORANDUM & ORDER*

KATZ, Senior District Judge.

**AND NOW**, this 23rd day of January, 2006, upon consideration of the State of

New Mexico's Motion to Dismiss Pendent New Mexico Claim in the Complaint as to Defendants King and Monarch ("NM Motion to Dismiss"), and the response thereto, it is hereby ordered that said Motion is **GRANTED** for the reasons set forth below.

## I. THE NEW MEXICO MEDICAID FALSE CLAIMS ACT DOES NOT APPLY RETROACTIVELY

In paragraphs 211 through 222 of his Third Amended Complaint, Relator seeks damages under the New Mexico Medicaid False Claims Act, N.M.S.A.1978, § 27–14–1 *et seq.* (the "NM False Claims Act")(referenced therein by its legislative bill number, HB 478). Relator's claims period ends December 31, 2002. The NM False Claims Act, however, was not effective until May 19, 2004 (as accurately noted in paragraph 212 of the Third Amended Complaint). Despite Relator's arguments to the contrary, this court finds that the NM False Claims Act has no retroactive applicability and Relator's pendent claim under the statute must fail.

### A. Presumption against retroactivity

█ The courts have long favored a presumption against statutory retroactivity. *Landgraf v. USI Film Products, et al.,* 511 U.S. 244, 245, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)(citing *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). This presumption rests on considerations of fairness; individuals should have the opportunity to know what the law is and to act accordingly. *Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483; *see General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). Thus, "con-gressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen,* 488 U.S. at 208, 109 S.Ct. 468; *e.g., Greene v. U.S.,* 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *Claridge Apartments Co. v. Comm'r,* 323 U.S. 141, 164, 65 S.Ct. 172, 89 L.Ed. 139 (1944); *Miller v. U.S.,* 294 U.S. 435, 439, 55 S.Ct. 440, 79 L.Ed. 977 (1935); *U.S. v. Magnolia Petroleum Co.,* 276 U.S. 160, 162–63, 48 S.Ct. 236, 72 L.Ed. 509 (1928).

Relator cites *Bradley v. School Board of Richmond* in support of a presumption *in favor of* statutory retroactivity, unless such retroactivity "would result in manifest injustice or there is statutory discretion or legislative history to the contrary." 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); Relator's Response ¶ 4. Relator fails to note, however, that the Supreme Court "anchor[ed][its] holding in [that] case on the principle that a court is to apply the law in effect at the time it renders its decision," unless doing so would result in the aforementioned injustice or would ignore statutory discretion or legislative history. *Bradley,* 416 U.S. at 711, 94 S.Ct. 2006.

Unlike Relator's case, *Bradley* concerned the question of whether a change in the law ought to be applied to a case on direct review at the time the new law is enacted.[1] Other cases cited in support of a presumption of retroactivity are also dissimilar to the instant case. While *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia* relies on *Bradley* to find that a statute should be applied retroactively, it does so by finding that applicable "legislative history . . . would appear to support

---

1. While *Bradley* was pending before the Court of Appeals, a statute was enacted which authorized courts to award attorneys' fees to prevailing parties in school desegregation cases. The Supreme Court found that the prevailing plaintiffs could use the new statute to seek attorneys' fees, even though the statute was not in effect at the time that plaintiffs brought suit.

retroactive application of the new provision." 898 F.2d 914, 922, n. 9 (3d Cir. 1990). There is no such support offered by the NM False Claims Act's legislative history. In *Sikora v. Am. Can Co.*, the Third Circuit did find language in a newly enacted statute that a prohibition "shall take effect on the date of the enactment of this Act" could support an interpretation of prospective or retrospective application. 622 F.2d 1116, 1120 (3d Cir.1980). However, the court ultimately found that the statute was not to be applied retroactively, due in part to legislative history and to a "need to prevent manifest injustice." *Sikora*, 622 F.2d at 1123 (internal citation omitted).

### B. Retroactivity creating a new cause of action

■ Where a new statute would have a genuinely retroactive effect and thus "impair rights a party possessed when he acted, increase his liability for past conduct, or impose new duties with respect to transactions already completed," the presumption against retroactivity holds, barring clear congressional intent to the contrary. *Id.* Indeed, "*Bradley* did not replace the traditional presumption." *Id. Bradley* was an exception because it involved attorneys' fees determinations, which are "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial." *Id.* at 277, 114 S.Ct. 1483 (citing *White v. N.H. Dept. of Employment Sec.*, 455 U.S. 445, 451–52, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)). In addition, in *Bradley* the attorneys' fees determination would have been the same under general equitable principles, even if the new statute were

not found to apply retroactively. In light of this, the Supreme Court found that the new statute "d[id] not impose an additional or unforeseeable obligation." *Bradley*, 416 U.S. at 721, 94 S.Ct. 2006.

■ Given the absence of guiding instructions from the New Mexico legislature, this court must consider whether the NM False Claims Act is the type of provision that should rebut the presumption against retroactivity and should govern cases arising before its enactment. As might be expected with a such a recently enacted statute, there exists very little case law concerning the statute, and none as to retroactivity. The NM False Claims Act closely tracks the language of the federal False Claims Act ("FCA"), however.[2] Thus, in order to determine whether the New Mexico statute applies retroactively, this court turns to the same question concerning the FCA.

In *Hughes Aircraft Co. v. U.S., ex rel. Schumer*, the relator argued that a 1986 amendment to the FCA should be applied retroactively (an issue upon which Congress was silent as to its intent) to false claims made between 1982 and 1984.[3] 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). He contended that "the 1986 Amendments to the *qui tam* bar do not create a new cause of action where there was none before, change the substance of the extant cause of action, or alter a defendant's exposure for a false claim by even a single penny [and] thus d[o] not 'increase a party's liability for past conduct.'" *Id.* at 948, 117 S.Ct. 1871 (citing *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483). This court follows the Supreme Court in rejecting such an argument.

---

**2.** *Compare, e.g.*, N.M.S.A.1978 § 27–14–9 *with* 31 U.S.C. § 3730(d).

**3.** Prior to 1986, *qui tam* suits were barred if the information on which they were based was already in the Government's possession.

The 1986 amendment allowed such suits based on information in the Government's possession, except where the suit was based on publicly disclosed information and was not brought by an original source of the information.

The 1986 amendment essentially created a new cause of action. The courts are now open to FCA claims brought by a private relator on behalf of the United States, whereas "prior to 1986, once the United States learned of a false claim, only the Government could assert its rights under the FCA against the false claimant." *Hughes Aircraft*, 520 U.S. at 949, 117 S.Ct. 1871 (internal citation omitted). *Qui tam* relators are "different in kind than the Government" and are "motivated primarily by prospects of monetary reward rather than the public good." *Id.* In "permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially create[d] a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." *Id.* While it's true that an FCA defendant faces the same financial liability whether the action is brought by the Government or a *qui tam* relator, the 1986 amendment "eliminate[d] a defense to a *qui tam* suit—prior disclosure to the Government—and therefore change[d] the substance of the existing cause of action for *qui tam* defendants by 'attach[ing] a new disability, in respect to transactions or considerations already past.'" *Id.* at 948, 117 S.Ct. 1871 (citing *Landgraf*, 511 U.S. at 269, 114 S.Ct. 1483).

In *Hughes*, the basic statute already existed at the time of the lawsuit, and the court was called upon merely to consider the retroactive applicability of an amendment. In the instant case, the NM False Claims Act itself did not exist at the time Relator's action accrued. Surely there is no better example of a legislative development that permits more plaintiffs to bring suit than was possible before the statutory enactment—literally creating a new cause of action. With no legislative history available to the contrary, this court must uphold the presumption against retroactive applicability and hold that the Relator's claim under the NM False Claims Act fails.

## II. RELATOR IS NOT ENTITLED TO RECOVERY UNDER THE COMMON FUND DOCTRINE

In the alternative, Relator argues that even if the NM False Claims Act has no retroactive applicability, the NM Motion to Dismiss is premature because Relator is entitled to a share of New Mexico's settlement agreement recovery under the common fund doctrine. This court disagrees.

■ "The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 820 (3d Cir.1995). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). The theory, however, has been applied "only in a few well defined situations," namely trust law, class actions and insurance subrogation. J. Parker, *The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation*, 21 Ind. L.Rev. 313 321–2 (1998).

Relator seeks to extend the doctrine to the current context so that he may claim a share of the settlements of the majority of states without *qui tam* statutes. He claims that "there are a huge string [sic] of cases which recognize the common fund doctrine for situations like that in this case." Third Amended Complaint ¶ 221. However, he cannot cite even one case in which the doctrine was applied to a *qui*

*tam* action. All of the cases cited by Relator in support of the common fund argument in fact involve class actions, not *qui tam* suits. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) and *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F.Supp. 525 (E.D.Pa. 1990).

■ The primary consideration in an application of the common fund doctrine is "whether the circumstances of th[e] case present an inequity that needs redress." *Brytus v. Spang & Co.,* 203 F.3d 238, 245 (3d Cir.2000). In class actions, the named plaintiffs bear the litigation costs, while the non-contributing unnamed plaintiffs also share in the benefits. The courts have long recognized that it "would be unjust if [a] plaintiff were required to bear the entire cost of the litigation with no contribution from the other beneficiaries of the fund." *Id.* (citing *Trustees v. Greenough,* 105 U.S. 527, 532, 15 Otto 52, 26 L.Ed. 1157 (1881)).

■ Given this inequity litmus test, it is not particularly surprising that the common fund theory has not been applied to any *qui tam* actions and is inapplicable to the instant case. First, and perhaps most glaringly, a common fund does not in fact exist. With each of the Plaintiffs and each of the non-*qui tam* states, a separate and severable settlement agreement has been reached. The mere fact that a large number of parties has reached such settlements does not mean that the sum of the settlement amounts somehow constitutes a common fund in the manner of a class action award.

Second, New Mexico is not looking for a "free ride," as alleged by Relator (Relator's Response, ¶ 13), as to the benefits received due to Relator's claims. Each of the named Plaintiffs and non-*qui tam* states has directly signed an individual, bilateral settlement agreement with King, which certainly incurred the burden and expense of litigation. The non-*qui tam* states are not even parties to the present action. Thus, even if the court were to find an equitable justification for applying the common fund theory, it is far from apparent that it has the authority to order Defendants to pay the non-*qui tam* states' settlement proceeds into a registry, as Relator would have it do.[4]

Third, Relator is in fact not asking to be compensated for the cost of the lawsuit and his attorneys' fees, but rather to be rewarded for providing information regarding King by states who have not legislatively elected to do so. Relator argues that under the common fund theory, he has the right to attorneys' fees from the states without *qui tam* statutes. Relator's First Amended Petition for Fees ¶ 9. To that end, he requests an award of up to thirty-three and a third percent (33.3%) of the individual settlements of the non-*qui tam* states. Third Amended Complaint ¶ 221. To grant such request would pervert the intentions of states which have decided not to codify *qui tam* statutes, effectively requiring them to offer a higher award in *qui tam* actions than the federal government or other states who have chosen to pass such statutes.[5]

4. A registry may only be created upon the request of the party depositing the money. Fed.R.Civ.P. 67. Where *qui tam* settlement funds were deposited into escrow-type accounts, they were so deposited by agreement between defendants and the government in order to provide interest payments to the government. The accounts were not for the benefit of the relator nor were they imposed by

the courts. *See U.S. ex rel. Merena v. SmithKline Beecham Corp.,* No. 93–5974, 1997 U.S. Dist. LEXIS 17041, at *9–10 (E.D.Pa. Oct. 28, 1997).

5. The FCA allows a relator to recover up to twenty five percent (25%) of the final judgment or settlement against a defendant. 31 U.S.C. § 3730(d)(1). Ten of the 13 states with

Relator's extension of the common fund doctrine to the current context would essentially impose whistleblower reward statutes on 38 sovereign state governments that have decided not to enact them. As noted above, Relator would have this court impose the inequitable result of imposing a more severe liability on the non-*qui tam* states than the *qui tam* states, even though the non-*qui tam* states do not receive the statutory benefits of a *qui tam* statute, including service of the complaint and the opportunity to review and investigate. *See* 31 U.S.C. § 3730(b)(2). Whether or not it is prudent for state governments to reward whistleblowers, it is not the role of this court to say. Thus, Relator's application of the common fund theory cannot be justified in this case.

For the foregoing reasons, the State of New Mexico's Motion to Dismiss Pendant New Mexico Claim in the Complaint as to Defendants King and Monarch is hereby **GRANTED.**[6] An appropriate order follows.

### ORDER

**AND NOW,** this 23rd day of January, 2006, upon consideration of the State of New Mexico's Motion to Dismiss Pendant New Mexico Claim in the Complaint as to Defendants King and Monarch, and the response thereto, it is hereby ordered that said Motion is **GRANTED.**

---

existing *qui tam* statutes have adopted this federal maximum. *See* § 740 ILCS 175/4(d)(1); Fla. Stat. § 68.085(1); Tex. Hum. Res.Code § 36.110(a); ALM GL ch. 12, § 5F(1); Tenn.Code Ann. § 71–5–183(d)(1)(A); 6 Del. C. § 1205(a); HRS § 661–27(a); Va.Code Ann. § 8.01–216.7(A); N.M. Stat. Ann. § 27–14–9(A). California and Nevada allow up to thirty-three percent (33%). *See* Cal. Gov.Code § 12652(g)(2); NRS § 357.210(1). Louisiana and the District of Columbia allow "not more than twenty percent" (20%). La. R.S. 46:439.4(A)(1); D.C.Code § 2–308.15(f)(1).

6. The State of New Mexico moves to dismiss on the additional grounds that service of Relator's *Second Amended Complaint* was never made on another state agency in addition to the New Mexico Attorney General, as required by the NM False Claims Act. Therefore, New Mexico claims, Relator has never complied with the NM False Claims Act even on procedural grounds. NM Motion to Dismiss ¶ 4. The court declines to reach this question, as its ruling that the NM False Claims Act does not apply retroactively renders the procedural issue moot.