**The Commonwealth of VIRGINIA, ex rel. HUNTER LABS LLC, et al.**

v.

**QUEST DIAGNOSTICS INC., et al., Defendants.**

**Case No. 1:13–cv–01129–GBL–TCB.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed April 22, 2015.

Mark P. Friedlander, Jr., Friedlander Friedlander & Earman PC, McLean, VA, for Hunter Labs LLC and Chris Riedel.

Adele McDonald Neiburg, Candice M. Deisher, Office of the Attorney General, Richmond, VA, for Virginia Commonwealth of Office of the Attorney General.

Nicholas Delvecchio Sanfilippo, McGuireWoods LLP, McLean, VA, Robert William Loftin, McGuireWoods LLP, Richmond, VA, Sara Renee Kusiak, Joseph William Clark, Jones Day, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

ANTHONY J. TRENGA, District Judge.

THIS MATTER is before the Court on Plaintiff Commonwealth of Virginia's ("Commonwealth") Motion for Relators' Share Disbursement of $138,925.34 ("Motion for Relators' Share") (Doc. 107). This case arises from Plaintiffs Hunter Laboratories, Inc., and Chris Riedel's (collectively "Relators") *qui tam* action on behalf of the Commonwealth pursuant to § 8.01–216.1 of the Virginia Fraud Against Taxpayers Act ("VFATA") for alleged Medicaid fraud. The first issue is whether the Court should grant the Commonwealth's Motion for Relators' Share because the "proceeds of a [Medicaid fraud] settlement" are calculated using the years the VFATA was in effect when (1) the VFATA became effective on January 1, 2003, and (2) the settlement agreement includes a conduct/release period of November 1, 1997, through September 25, 2014. The second issue is whether the Court should grant the Commonwealth's Motion for Relators' Share because the "proceeds of a [Medicaid fraud] settlement" are calculated using only the state portion of the settlement amount when (1) the Commonwealth is

required to return federal overpayments to the United States, and (2) neither the United States, nor the Commonwealth, have intervened in the Relators' private litigation of the VFATA action.

The Court GRANTS the Commonwealth's Motion for Relators' Share for two reasons. First, because the VFATA does not apply retroactively to claims predating its enactment. Second, because under the VFATA, the "proceeds of the settlement" in a Medicaid fraud action means only the Settlement Agreement amount that is actually received by the Commonwealth after returning overpayments to the United States under 42 U.S.C. § 1396b(d)(3)(A) (2012).

## I. BACKGROUND

On December 19, 2007, Relators filed a *qui tam* action in Virginia Circuit Court for the County of Fairfax under the VFATA, alleging that Defendants Quest Diagnostics, Inc., Quest Diagnostics Nichols Institute f/k/a Quest Diagnostics, Inc., Quest Diagnostics Clinical Laboratories, Inc., and Specialty Laboratories, Inc.[1] (collectively "Quest"), defrauded the Commonwealth by submitting false Medicaid claims in violation of the VFATA, Va.Code § 8.01–216.1 *et seq.* (Doc. 108 at 1). Specifically, Relators alleged that from November 1, 1997, through September 25, 2014, Quest: (1) charged Virginia's Medicaid program more than their usual and customary charges to the general public in violation of Virginia Code § 8.01–216.1 *et seq.;* and (2) offered and gave discounts on laboratory tests for non-Medicaid services in order to induce

purchasers to refer Virginia Medicaid laboratory test business to Quest in violation of the federal Anti–Kickback Statute, 42 U.S.C. § 1320a–7b (2012). (Doc. 108 at 1–2).

On April 12, 2013, the Commonwealth filed a Notice of Election to Decline Intervention in the *qui tam* action under Virginia Code § 8.01–216.5(D). (Doc. 108 at 2). Following the Commonwealth's declination decision, the Relators moved forward to litigate the case. (Doc. 108 at 2). The action was removed to this Court on September 9, 2013. (Doc. 1 ¶ 9).

On November 6, 2013, Quest, the Relators, and the Commonwealth reached a settlement whereby Quest agreed to pay a settlement amount of $1,250,000 to the Commonwealth to resolve its civil liability for the allegations in the *qui tam* action. (Doc. 108 at 2). The Settlement Agreement states that "[t]he Quest Defendants shall pay the Settlement Amount consisting of the Virginia federal and state respective Medicaid portions in settlement of all claims to be released by the State, no later than twenty (20) business days after the Effective Date of this Agreement...." (Doc. 108–1 at 4) (emphasis added). The Settlement Agreement also states that "[c]onditioned upon the State's receipt of the Settlement Amount from the Quest Defendants, the State shall pay, on behalf of the *Qui Tam* Plaintiffs, a percentage of the applicable proceeds in an amount to be negotiated, to ... *Qui Tam* Plaintiff's counsel." (Doc 108–1 at 4) (emphasis added). The effective date of the Settlement

---

1. On or about December 11, 2013, Relators filed an amended complaint. Laboratory Corporation of America and Laboratory Corporation of America Holdings' (collectively referred to as LabCorp) filed a motion to dismiss Relators' amended complaint on or about January 17, 2014, which was fully briefed. (Docs. 70–71, 73–75, 78, 80). In its Order on March 18, 2014, followed by a later

Memorandum Order and Opinion on May 13, 2014, the Court granted LabCorp's Motion to Dismiss in its entirety, dismissed the amended complaint with prejudice, and denied leave to amend. (Docs. 100, 105). On or about June 12, 2014, Relators appealed the Court's Order to the Fourth Circuit Court of Appeals (USCA Case Number 14–1625).

Agreement was the date of signature of the last signatory. (Doc. 108–1 at 11). The Settlement Agreement was fully executed by all signatories on September 25, 2014. (Doc. 108 at 2). The Commonwealth filed its Motion for Relators' Share Disbursement of $138,925.34 on September 26, 2014.

## II. ANALYSIS

The Court GRANTS the Commonwealth's Motion for Relators' Share for two reasons. First, because the VFATA does not apply retroactively to claims predating its enactment. Second, because under the VFATA, the "proceeds of the settlement" in a Medicaid fraud action means only the Settlement Agreement amount that is actually received by the Commonwealth after returning overpayments to the United States under 42 U.S.C. § 1396b(d)(3)(A) (2012). Thus, Relators are only entitled to 28% of the Commonwealth's Share for claims that accrued from the VFATA's enactment on January 1, 2003, through and until September 25, 2014, when the Settlement Agreement was fully executed by all parties.[2]

### a. The VFATA Does Not Apply Retroactively

█ The Court GRANTS the Commonwealth's Motion for Relators' Share because the VFATA does not apply retroactively as: (1) Virginia has a presumption against statutory retroactivity absent contrary legislative intent; and (2) a comparison of the VFATA to the federal False Claims Act ("FCA"), which is also silent as to retroactivity, supports a finding that the VFATA is not retroactive.

█ In Virginia, it is a "fundamental principle[ ] of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." *Bd. of Supervisors of James City Cnty. v. Windmill Meadows, LLC*, 287 Va. 170, 752 S.E.2d 837, 843 (2014) (citing *Berner v. Mills*, 265 Va. 408, 579 S.E.2d 159, 161 (2003)). The Virginia Supreme Court has "never required that the General Assembly use any specific form of words to indicate that a new statute ... is intended to be applied retroactively." *Id.* (citations omitted). Rather, courts in Virginia look to "the context of the language used by the legislature to determine if it shows it was intended to apply retroactively and prospectively." *Id.* (citations omitted). The Supreme Court of Virginia has held that "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.* at 842 (citing *Commonwealth v. Leone*, 286 Va. 147, 747 S.E.2d 809, 811 (2013)) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 639 S.E.2d 174, 178 (2007)). " '[W]hen the legislature has used words of a clear and definite meaning, the courts cannot place on them a construction that amounts to holding that the legislature did not intend what it actually has expressed.' " *Id.* at 842–43 (citing *Paugh v. Henrico Area Mental Health & Developmental Servs.*, 286 Va. 85, 743 S.E.2d 277, 279 (2013)) (quoting *Hubbard v. Henrico Ltd. P'ship*, 255 Va. 335, 497 S.E.2d 335, 337 (1998)).

Neither party cites to any Virginia case law interpreting the retroactivity of § 8.01–216.7(B) of the VFATA as it applies to a settlement agreement for violations that existed prior to the enactment of the VFATA. However, federal courts have dismissed *qui tam* Medicaid fraud claims

---

**2.** The issue of the validity of the Centers for Medicare & Medicaid Services ("CMS") State Health Official ("SHO") Letter # 08–004 (2008) is not before the Court. Moreover, the Court need not decide its validity to resolve the dispute between Relators and the Commonwealth.

filed under the VFATA where some of the claims accrued prior to the enactment of the VFATA. *See United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. CIV.A. 06–3213, 2013 WL 2649704, at *13 (E.D.Pa. June 13, 2013). In *Novartis*, the relator brought Medicaid fraud claims under the VFATA for fraud that began shortly after December 14, 2001, and extended through the filing of a July 21, 2006, *qui tam* action. *Id.* at *1–*2. The VFATA went into effect on January 1, 2003. *See* Va.Code § 8.01–216.3 *et seq.* The court dismissed the claims under the VFATA and held the relator "may not bring claims under the VFATA to the extent that those claims predate the statute[ ] under which [the relator] has filed suit." *Novartis*, 2013 WL 2649704, at *13.

Additionally, to determine whether a state FCA applies retroactively, federal courts have looked to the similarities between a state FCA and the federal FCA on the issue of silence as to retroactivity. *See United States ex rel. Bogart v. King Pharms.*, 410 F.Supp.2d 404, 407 (E.D.Pa. 2006) *aff'd*, 493 F.3d 323 (3d Cir.2007). In *Bogart*, the relator brought Medicaid fraud claims under the New Mexico Medicaid False Claims Act ("NM FCA") for a claims period that ended on December 21, 2002. *Id.* at 406. The NM FCA went into effect on May 19, 2004. *See id.*; N.M.S.A.1978, § 27–14–1 *et seq.* The court explained:

> [g]iven the absence of guiding instructions from the New Mexico legislature, this court must consider whether the NM False Claims Act . . . should govern cases arising before its enactment. . . . [where there exists] . . . a recently enacted statute, . . . very little case law concerning the statute, and none as to retroactivity. The NM False Claims Act closely tracks the language of the federal False Claims Act ("FCA"), however. Thus, *in order to determine whether the New Mexico statute applies retroactively, this court turns to the same question concerning the FCA.*

*Id.* at 407 (emphasis added). The court then looked at the history of applying the Supreme Court's long favored presumption against statutory retroactivity to cases involving federal *qui tam* suits. *Id.* at 406 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 245, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)); *see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 939–40, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (dismissing *qui tam* action absent clear statutory expression of congressional intent to retroactively apply the *qui tam* provisions of the FCA to conduct completed before their enactment). The court dismissed the claims because the alleged fraudulent activity occurred before the NM FCA went into effect and the New Mexico legislature did not evince an intent to have the statute apply retroactively. *Bogart*, 410 F.Supp.2d at 408.

Thus, to determine whether the Relators' Share should be reduced in this case because some of Quest's violations predated the VFATA's enactment, this Court will look to both: (1) the intent of the Virginia General Assembly as expressed by the plain language of the VFATA and (2) the clear statutory expression of the Virginia General Assembly's intent to include pre-enactment conduct under the VFATA.

Here, both parties agree that the VFATA, which became effective on January 1, 2003, does not apply retroactively. (*See* Doc. 108 at 3; Doc. 113 at 4). However, the parties disagree as to whether the Medicaid fraud violations included in the text of the Settlement Agreement that occurred during the five-year pre-VFATA period from November 1, 1997, through December 31, 2002 should be covered by the "proceeds of the settlement" of the *qui*

*tam* Medicaid fraud action between the Commonwealth, Relators, and Quest.

Like the court in *Bogart,* this Court holds that the plain language of the VFATA shows the Virginia General Assembly's clear intent to not have the VFATA apply retroactively as its express language provides an effective date of January 1, 2003, and includes no language to the contrary. *See* Va.Code § 8.01–216.3 *et seq.;* 2002 Va. Acts 842 ("That the provisions of this act shall become effective January 1, 2003."). Because the Court finds the VFATA does not apply retroactively, the Court holds that, as in *Novartis,* Relators may not bring claims under the VFATA to the extent that those claims predate the VFATA. The Court holds that for Relators' claims brought under the VFATA, the "proceeds of the settlement" of the *qui tam* Medicaid fraud action should be reduced to exclude the five-year pre-VFATA period from November 1, 1997, through December 31, 2002. Therefore, the court GRANTS the Commonwealth's Motion for Relators' Share because the VFATA does not apply retroactively and only applies to claims that accrued from its enactment on January 1, 2003, through and until September 25, 2014.

**b.  Relators are Entitled to Twenty–Eight Percent of Commonwealth Share Only**

■ The Court GRANTS the Commonwealth's Motion for Relators' Share because § 8.01–216.7(B) of the VFATA mandates that the Relators are entitled to 28% of the "proceeds of the settlement" and, under federal law, Medicaid overpayments must be returned to the United States.

Therefore, the Relators' share is 28% percent of the Commonwealth's Share of the settlement amount only—$138,925.34.

Regarding "proceeds of the settlement," section 8.01–216.7(B) of the VFATA reads, in relevant part, "[i]f the Commonwealth does not proceed with an action [under the Act], the person bringing the action or settling the claim shall receive an amount ... [that] shall be not less than twenty- five percent and not more than thirty percent of the *proceeds of the ... [Medicaid fraud] settlement* and shall be *paid out of the proceeds.*" (emphasis added). However, under the Medicaid program, monies owed to the United States in a Medicaid fraud action are labeled "overpayments" and are "required to be refunded [to the United States]." *See W.Va. Dep't of Health & Human Res. v. Sebelius,* 649 F.3d 217, 224 (4th Cir.2011) (citing 42 C.F.R. § 433.304); *see also* 42 U.S.C. § 1396b(d)(3)(A) (2012) (explaining an "overpayment" as "[t]he pro rata share to which the United States is equitably entitled"). Here, the parties dispute whether that 28% payable to Relators should be taken from the entire Settlement Amount paid to the Commonwealth by Quest or whether the 28% should be taken from an amount that excludes any overpayments owed to the United States.

Though there is sparse Virginia case law interpreting what "proceeds of the settlement" means under § 8.01–216.7(B), the language of the VFATA mirrors the provisions of the federal FCA, specifically with regard to the proceeds of the settlement.[3] Where federal courts have found "it [ ] clear that the Virginia General Assembly intended to pattern the VFATA after the

---

**3.** The FCA, 31 U.S.C. § 3730(d)(2) (2012) reads, in relevant part, "[i]f the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for col- lecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the *proceeds of the action or settlement* and *shall be paid out of such proceeds.*" (emphasis added).

548

[federal] FCA," the courts have construed the language of the VFATA to have the same meaning as the language in the federal FCA "specifically with regard to determining the relator's share of a judgment or settlement." *See United States ex rel. Johnson v. Universal Health Servs., Inc.,* 889 F.Supp.2d 791, 793 (W.D.Va.2012) (holding that the Relator's Share is determined based on the same factors under both federal FCA and VFATA claims because the statutes' language parallels each other). Therefore, to determine whether the Relators' Share should be paid from a settlement amount that excludes monies owed to the United States, this Court looks to the interpretation of "proceeds of the settlement" under the federal FCA.

Here, the Court holds that the Relators are entitled to the "proceeds of the settlement" absent what the United States is owed because in Medicaid fraud actions under the federal FCA, federal courts have consistently held that "proceeds of the settlement" means "what is *'received'* by the federal government" from defendants. *See United States ex rel. Fox v. Nw. Nephrology Assoc., P.S.,* 87 F.Supp.2d 1103, 1107 (E.D.Wa.2000) ("[I]n determining the relator's share, the court looks to the amount actually *received* by the United States."); *United States ex rel. Merena v. SmithKline Beecham Corp.,* 52 F.Supp.2d 420, 440 (E.D.Pa.1998), *rev'd in* part on other grounds 205 F.3d 97 (3d Cir.2000) (holding that "[a] *qui tam* share may be obtained from the [United States] only out of the proceeds of the settlement *received* by the [United States]" and "[t]he United States was never entitled to receive the amounts to be paid to the states.") (emphasis added).

Because the Court finds that the Virginia General Assembly intended to pattern the VFATA after the federal FCA, the Court holds that the VFATA's "proceeds of the settlement" means only the amount *received* by the Commonwealth. Here, the Court finds that a relators' share disbursement of $138,925.34 is appropriate as it represents the state portion of Medicaid recovery from January 1, 2003, through September 25, 2014, when the Settlement Agreement was executed.

Therefore, the Court GRANTS the Commonwealth's Motion for Relators' Share Disbursement of $138,925.34 because: (1) under the VFATA, the "proceeds of the settlement" in a Medicaid fraud action means only the share of the Settlement Agreement amount that is actually *received* by the Commonwealth after returning overpayments to the United States; and, (2) as discussed above, this amount is further reduced to account for only the claims accrued from the VFATA's enactment on January 1, 2003, through and until September 25, 2014 when the Settlement Agreement was fully executed by all parties.

### III. CONCLUSION

The Court GRANTS Plaintiff's Motion for Relators' Share Disbursement of $138,925.34 for two reasons. First, because the VFATA does not apply retroactively to claims pre-dating its enactment. Second, because under the VFATA, the "proceeds of the settlement" in a Medicaid fraud action means only the Settlement Agreement amount that is actually received by the Commonwealth after returning overpayments to the United States under 42 U.S.C. § 1396b(d)(3)(A) (2012). Thus, Relators are only entitled to 28% of the Commonwealth's Share for claims that accrued from the VFATA's enactment on January 1, 2003, through and until September 25, 2014, when the Settlement Agreement was fully executed by all. Accordingly, it is hereby

**ORDERED** that the Commonwealth of Virginia's Motion for Relators' Share Dis-

bursement (Doc. 107) is **GRANTED;** and it is further

**ORDERED** One Hundred Thirty-eight Thousand Nine Hundred Twenty–Five Dollars and Thirty-four cents ($138,925.34) is awarded as the full Relators' Share.

**IT IS SO ORDERED.**